DEBORAH LEE THILTGES, APPELLANT, V. FREDERICK JOHN THILTGES, APPELLEE.

527 N.W.2d 853

Filed February 10, 1995.   No. S-92-811.

Dana L. Leach and Louie M. Ligouri, of Ligouri Law Office, for appellant.

Patricia A. Lamberty, of Zweiback, Hotz & Lamberty, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ.

LANPHIER, J.

We granted further review of a decision of the Nebraska Court of Appeals, *Thiltges v. Thiltges*, 94 NCA No. 24, case No. A–92–811 (not designated for permanent publication). Deborah Lee Thiltges appealed to that court from certain orders contained in the decree entered by the district court for Richardson County dissolving her marriage to the respondent–appellee, Frederick John Thiltges. Appellant argues that the district court did not equitably divide the parties' marital estate because it failed to require the payment of interest on appellant's deferred property award, which was payable over 12 years. Finding that an award of interest will not impose an undue burden on appellee, we modify the decree of the district court to require interest to be paid from the date of the decree.

Secondly, with regard to the Court of Appeals' failure to award alimony, appellant asserts that the Court of Appeals failed to consider appellee's actual earning capacity rather than the profitability of his farming operations in determining the propriety of an award of alimony. Although we agree that the Court of Appeals erred in failing to consider both spouses' actual earning capacities, we hold that the record does not support an award of alimony. We remand the cause with directions to modify the division of property as hereinafter stated.

## BACKGROUND

Deborah and Frederick Thiltges were married on August 18, 1976, and have one child, John, born October 20, 1979. On February 7, 1992, appellant filed a petition for the dissolution of the marriage of the parties.

Appellee is a farmer and works primarily in partnership with his brother. At trial, evidence regarding the land, equipment, and cash owned by the parties was adduced. Some of the farm–related assets were purchased by the parties during their marriage, and others were inherited from appellee's relatives.

Appellant is a registered nurse, and during the parties' marriage, she worked intermittently as a nurse and earned approximately $80,000 over the term of the marriage. She also helped with the farmwork by cooking for hayers and sheep shearers, walking beans, cutting thistles, taking care of lambs, mowing, et cetera. At the time of the divorce decree, appellant was 3 hours short of obtaining a teaching certificate. Two weeks prior to the trial of this matter, appellant began full–time employment at a nursing home and was earning $13.50 per hour or approximately $27,000 per year. However, she planned to seek employment as a teacher upon obtaining her teaching certificate. Appellant testified that she wanted to be a teacher so that she could spend time with her 12–year–old son and avoid the evening and weekend hours required by her nursing position. Appellant testified that a teacher's starting salary is approximately $18,000.

In its decree, the district court set off several parcels of land as appellee's nonmarital property. The court decreed four

parcels of land, valued at a total of $194,000, to be marital property. Other assets, including individual retirement accounts, automobiles, and household goods, were also deemed to be marital assets. The asset value of the total marital estate equaled $292,997.

Appellee testified that he owned approximately $39,000 in machinery, equipment, and livestock at the time of the parties' marriage in 1976. Stating there was no clear showing of which of these assets remained or their value, the court deemed them to be marital assets.

The parties' land was mortgaged to the extent of $127,000. Other marital debt totaled $56,482. Therefore, the net value of the marital estate equaled $109,515.

The district court awarded personal property and household goods valued at $6,005 to appellant. The real property and the remaining assets, valued at $286,992, were awarded to appellee. All indebtedness was assigned to appellee, and he was ordered to hold appellant harmless with respect to the debts.

At trial, appellant testified that she preferred a cash award rather than any part of the farming operation. She stated that she was agreeable to an order that would provide for a sum to be paid over a period of time. The district court decreed:

> That in order to equitably adjust the difference in net value of the property awarded the parties herein, respondent receiving the greater portion and value thereof, and to provide support for petitioner, respondent should pay alimony to petitioner in the amount of $300 a month for a period of 12 years, the first such payment being due September 1, 1992, and a like amount on the first day of each month thereafter until paid in full. Such alimony shall be deemed vested and not terminable on the death of either party or remarriage of petitioner.

The monthly payments total $43,200. Accordingly, the net value of the marital estate awarded to appellee equaled $60,064. The total net value of the deferred property settlement and the $6,005 of personal property awarded to appellant equaled $49,205.

In her arguments to the Court of Appeals, appellant asserted that the district court's order directing appellee to pay her a sum

of $43,200 in monthly increments for a period of 12 years fails to equitably divide the marital estate when the net present value of the award is considered. Appellant asserted that the present value of the award was less than one–third of the marital estate.

She did not challenge the district court's attempt to award alimony for the dual purposes of maintenance and a division of property. However, appellant contended that the district court failed to separately consider each purpose to arrive at an equitable settlement award. Appellant asserted that the circumstances dictated an award reflecting a property division of one–third to one–half in addition to a sufficient amount for her support and maintenance.

The Court of Appeals affirmed the district court's order directing appellee to pay a sum of $43,200 to appellant, that amount to be paid in $300 monthly increments for a period of 12 years. However, the Court of Appeals decreed that the amounts to be paid appellant were to be considered a division of property, rather than alimony. The Court of Appeals concluded that the evidence did not support an award of alimony to appellant. We granted appellant's petition for further review.

## ASSIGNMENTS OF ERROR

Appellant asserts that the Court of Appeals erred in (1) treating $300 a month payable over a period of 12 years the same as $43,200 net worth; (2) considering solely the earning capacity of appellant in denying alimony and changing the district court's alimony award which was, in part, to provide support for appellant; and (3) failing to consider appellee's actual earning capacity rather than the profitability of appellee's personal farming operations in determining the propriety of an award of alimony.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Jirkovsky v. Jirkovsky, ante* p. 141, 525 N.W.2d 615 (1995); *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994); *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994). In a review de novo on the record, we reappraise the evidence as

presented by the record and reach our own independent conclusions with respect to the matters at issue. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witness and accepted one version of the facts rather than another. *Jirkovsky, supra*; *Reichert, supra*.

The division of property and the awarding of alimony is a matter entrusted to the discretion of the trial judge and, on appeal, will be reviewed de novo on the record and will be affirmed in the absence of an abuse of the trial judge's discretion. *Ritz v. Ritz*, 229 Neb. 859, 429 N.W.2d 707 (1988).

## ANALYSIS

*Disposition of Property.*

Appellant asserts that the district court erred by failing to award her an equitable share of the marital estate. She does not contest the district court's valuation of the marital estate, nor does she contest the court's order awarding the farming operation to appellee and cash to herself. Appellant contends that the present value of her cash award is less than one–third of the marital estate.

Present value is "[t]he current worth of a certain sum of money due on a specified future date after taking interest into consideration." Glenn G. Munn, Encyclopedia of Banking and Finance 773 (F.L. Garcia ed., 8th ed. 1983). Appellant asserts that the current worth of $43,200 payable without interest over a period of 12 years is clearly worth less than a lump–sum payment of $43,200.

The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. The division of property is not subject to a precise mathematical formula, but the general rule is to award a spouse one–third to one–half of the marital estate. *Jirkovsky, supra*; *Reichert, supra*. The threshold question is not the present value of appellant's deferred marital property. The first question must be whether the amount of that settlement as made is fair and reasonable.

As stated above, the net value of the Thiltges' marital estate

was $109,515. Appellee was awarded $60,064, and appellant was awarded $49,205. Ignoring for the moment appellant's "present value" argument, we note that appellee received approximately 55 percent of the marital property and appellant received approximately 45 percent of the marital property. In our de novo review of the record, we find that there was no abuse of discretion by the district court in determining that the net marital estate should be divided almost evenly between the parties.

We now address the question of whether the marital estate was, in fact, evenly divided when the present value of the deferred property settlement is considered.

We have specifically rejected the contention that our statute providing for interest on judgments, Neb. Rev. Stat. § 45–103 (Reissue 1993), requires that a marital property distribution payable in installments is entitled to interest running from the date of the entry of judgment. *Dryden v. Dryden*, 205 Neb. 666, 289 N.W.2d 525 (1980). Section 45–103 requires that when a judgment is to be paid in installments, interest begins to accrue on each individual installment only from the date it becomes due and payable. *Dryden, supra*; *Cumming v. Cumming*, 193 Neb. 601, 228 N.W.2d 296 (1975).

However, this court has previously held that a district court can exercise its discretion and award interest on deferred installments payable as part of a marital property distribution. *Seemann v. Seemann*, 225 Neb. 116, 402 N.W.2d 883 (1987); *Johnson v. Johnson*, 209 Neb. 317, 307 N.W.2d 783 (1981); *Nickel v. Nickel*, 201 Neb. 267, 267 N.W.2d 190 (1978). When exercising its discretionary power, one factor the district court should consider when determining whether a property settlement payable in installments should draw interest from the date of judgment is the burden on the payor–spouse. *Johnson, supra*; *Nickel, supra*.

In *Nickel*, the parties had been married 6½ years. The husband operated a farm in equal partnership with a brother, and that farming partnership had liabilities of some $311,000 on assets of approximately $565,000. The husband's share of the net worth of that partnership was $126,367. The trial court decreed that the wife should receive $48,000 as her property

settlement, payable in 180 equal monthly installments of $266.66 each, without interest. The wife was satisfied with the division of the property but argued that § 45–103 provided for interest at the rate of 8 percent per annum on all decrees and money judgments. At the statutory rate, an additional $3,000 in annual interest would be added to the wife's property settlement. Although we rejected the argument that § 45–103 required interest to be paid, we held that it was in the discretionary power of the trial court to order interest on installment payments. We concluded that the trial court had not abused its discretion by refusing to award interest because to do so would create an intolerable burden upon the husband.

In *Johnson*, the marital assets consisted primarily of farmland, farm machinery, and crops. The wife was awarded, in addition to other property, annual cash installments of $15,000 for 12 years. We noted that had the trial court awarded interest on the installment payments at the requested 8 percent per annum, the first year's interest would have been $12,000. Given that the wife's income after the divorce was anticipated to be $27,000, including all distribution and support payments, and the husband's prospective income was only projected to be $18,307, we held that an imposition of interest on the installment payments would have created an undue burden upon the husband.

As shown on his federal income tax forms, appellee's 1991 income from farm partnerships was $49,456. This income was reduced by $19,121 in losses in the personal farming operation, for an income of $30,335. In 1990, appellee's income from the farm partnership was $48,162 in income and the personal farming losses reduced that income by $9,952, resulting in an income of $38,210. For this 2–year period, appellee's average income was approximately $34,272.

Appellee testified that as of December 31, 1991, he and appellant owned 70 percent of the Thiltges Brothers Partnership. Kenneth Thiltges, appellee's brother, owned the remaining 30 percent. Appellee testified that he and his brother had decided to amend the partnership agreement in December 1991 or January 1992 in order to reflect a 50–50 arrangement. Therefore, appellee estimated that his 1992 partnership income

would be $36,898 and that his monthly income, after taxes, would be between $2,072 and $2,200.

At trial, appellee testified that his monthly living expenses, including child support and payments on debt, totaled $5,046.57. If true, appellee is operating with a $3,000 monthly deficit, and any additional expenses would certainly constitute an undue burden. However, we agree with the trial court's determination to disallow several of appellee's claimed expenses or debts.

Appellee claims that he owes money to his mother and brother and that the monthly payments on these debts total $1,331.10. However, the trial court noted that much of the evidence of the debts appeared on the eve of the dissolution proceedings and allowed only half of the alleged debt to be offset against the marital estate. We further note that appellee failed to list these debts on a balance sheet that he submitted to the Farmers Home Administration on January 15, 1991. Appellee also claims as a monthly expense a $607.50 debt payment to Ilene Good. However, by comparing the principal balance of this debt as stated on the Farmers Home Administration balance sheet to the principal balance appellee claimed he owed at trial in June 1992, it can be seen that appellee had made no payments to Good for over 1½ years. Excluding these disallowed debt payments from appellee's estimated monthly living expenses and adjusting for the amount of child support actually ordered by the court, appellee's estimate of his monthly expenses can be reduced to approximately $3,000.

When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witness and accepted one version of the facts rather than another. *Jirkovsky v. Jirkovsky, ante* p. 141, 525 N.W.2d 615 (1995); *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). Our review of the record indicates the district court disregarded some of appellee's statements of his financial situation. We will do likewise.

Appellee has been awarded all of the parties' income–producing property. In comparison, the interest–free installment award to appellant is the kind of asset which is most

susceptible to the ravages of inflation. As a result, the property division fell substantially short of the trial court's manifest attempt to effect an approximately equal division of the assets. See *In re Marriage of Conley*, 284 N.W.2d 220 (Iowa 1979). In evaluating the method chosen by the court to accomplish its objective, we recognize that equality need not be achieved with mathematical exactness. *Jirkovsky, supra; Reichert, supra.* However, equality can be more nearly approached with an award of interest on the cash award to appellant.

In our prior cases, when a trial court awarded a deferred property division payable in cash, it generally ordered annual principal payments. Accordingly, the amount of interest was addressed as an amount of annual interest on the remaining unpaid balance. See, *Seeman v. Seeman*, 225 Neb. 116, 402 N.W.2d 883 (1987); *Johnson v. Johnson*, 209 Neb. 317, 307 N.W.2d 783 (1981); *Nickel v. Nickel*, 201 Neb. 267, 267 N.W.2d 190 (1978). Here, appellee has been ordered to make monthly principal payments of a fixed amount over a relatively long period of time. Uniform monthly payments over a long term call for monthly payments of interest in addition to principal, similar to the type of payments made on most home mortgages, commonly referred to as "amortized loans." Glenn G. Munn, Encyclopedia of Banking and Finance 47 (F.L. Garcia ed., 8th ed. 1983). Payments made on amortized loans are of a fixed amount, such payments allocated first to interest and then to principal. Early in the loan, most of the fixed payment is allocated to interest, but as the principal is paid down, a greater portion of each payment is allocated to principal. *Id.*

In light of the facts and circumstances of this case, we exercise our equitable discretion and modify the decree of the district court to award interest on the deferred property division and order such interest to accrue at the rate of 8 percent amortized over the 12-year period. Although this matter is before us for a review de novo and we are called upon to render the judgment that should have been rendered by the trial court, we are unable to do so for several reasons.

Firstly, it is inappropriate for us to issue an amortization schedule to the parties. We believe that such an amortization

schedule will be beneficial to the parties. Secondly, we are unable to determine from the record whether appellee has made the monthly principal payments as ordered in the original decree. If we were to issue an amortization schedule, it would not reflect any nonpayment by the appellee.

Finally, the original decree of the district court ordering the monthly principal payments was dated August 21, 1992, with the first payment due September 21, 1992. Today's decree requires payment of interest from the date of the original decree, and as such, a certain sum of interest is now owed. It would probably be burdensome to require the appellee to pay the interest owing from the date of the original decree until present in a lump sum. However, it would be unfair to appellant for her to forego this unpaid interest. Therefore, we order the amount of the unpaid interest from the date of the original decree to be added to the amount of unpaid principal.

*Alimony.*

Appellant asserts that the Court of Appeals failed to consider the general equities of the case, including the fact that the trial court had deemed that the $300 monthly payments discussed above were intended to equalize the property settlement, as well as to provide support. Secondly, appellant argues that the Court of Appeals failed to consider appellee's actual earning capacity, rather than the profitability of his personal farming operations, in determining the propriety of an award of alimony.

Appellant holds a bachelor's degree in nursing, and at the time of the trial, she was 3 hours short of obtaining a teaching certificate. Two weeks prior to trial, she began full–time employment at a nursing home and was earning $13.50 per hour. Therefore, her annual earning capacity if she continued her employment as a nurse was $27,000. However, she planned to seek employment as a teacher upon obtaining her teaching certificate. Appellant testified that she wanted to be a teacher so that she could spend time with her 12–year–old son and avoid the evening and weekend hours required by her nursing position. She testified that a teacher's starting salary is approximately $18,000.

As stated above, the deferred property settlement in the

amount of $43,200 with interest is intended to evenly divide the Thiltges' marital estate between the parties. Accordingly, the Court of Appeals decreed that the amounts to be paid appellant were to be considered a division of property rather than alimony. See *Ruhnke v. Ruhnke*, 218 Neb. 355, 355 N.W.2d 339 (1984). We agree that the award was intended to be a division of property.

The Court of Appeals then addressed the issue of alimony and concluded that the evidence did not support an award of alimony to appellant. The Court of Appeals stated that there was no evidence to indicate that appellant required assistance for a period of time to get further training for employment or that the marriage adversely affected her employment chances. However, the Court of Appeals also acknowledged appellant's testimony that she intended to change careers in order to spend time with her son and that such change would result in lower earnings. *Thiltges v. Thiltges*, 94 NCA No. 24, case No. A–92–811 (not designated for permanent publication).

In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991); *Murrell v. Murrell*, 232 Neb. 247, 440 N.W.2d 237 (1989). Regarding the payment of alimony, Neb. Rev. Stat. § 42–365 (Reissue 1993) provides in part:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

As the Court of Appeals correctly stated, the trial court should consider what effect, if any, the marriage has had upon the ability of the supported spouse, if any, to secure employment in the future. § 42–365; *Stuczynski, supra*; *Murrell, supra*.

However, the trial court should also consider all of the enumerated factors identified in § 42–365, including the earning capacity of both spouses. *Stuczynski, supra*; *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984).

Although alimony is not to be used simply to equalize the income of the parties, a court may consider the relative economic circumstances of the parties when awarding alimony. *Murrell, supra*; *Ritz v. Ritz*, 229 Neb. 859, 429 N.W.2d 707 (1988). Disparity in income or potential income may partially justify an award of alimony. *Ziebarth v. Ziebarth*, 238 Neb. 545, 471 N.W.2d 450 (1991).

Appellee earned nearly $50,000 annually from his partnership farming operations. However, his personal farming ventures resulted in losses of $19,121 in 1991 and $9,952 in 1990. Although these losses are a factor to consider in determining the amount of alimony, " 'the condition of a spouse's business is not the sole factor in determining proper alimony. Rather, the earning capacity of a spouse operating a business is an element which is to be considered in determining alimony.' " *Ritz*, 229 Neb. at 866–67, 429 N.W.2d at 711 (quoting *Gleason, supra*).

Appellant argues that the Court of Appeals erred by considering her actual earning capacity but failing to consider appellee's actual earning capacity. Although appellant is correct, the record still does not adequately support an award of alimony to her.

In this case, the nearly equal division of property reflects the duration of the marriage and the contributions of both parties. Appellant partially interrupted her nursing career in order to take care of the parties' son, but that career interruption does not appear to have adversely affected her ability to engage in gainful employment as evidenced by the fact that she had become so just prior to trial. Given the facts and circumstances of this case, alimony is denied.

## CONCLUSION

We remand the cause with directions to modify the division of property in accordance with the foregoing opinion.

REMANDED WITH DIRECTIONS.