DANIEL A. PARDE, APPELLANT, V. LORALEE A. PARDE, APPELLEE.

602 N.W. 2d 657

Filed November 12, 1999.    No. S-97-985.

David P. Lepant and Reggie L. Ryder, of Andersen & Lepant, for appellant.

James E. Gordon and Kevin T. Lytle, of DeMars, Gordon, Olson and Shively, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## INTRODUCTION

Loralee A. Parde (wife) petitions this court for further review of the Nebraska Court of Appeals' decision in *Parde v. Parde*, 8 Neb. App. 242, 591 N.W.2d 783 (1999), claiming that the appellate court either ignored or incorrectly applied the principles set forth in *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985). The Court of Appeals had determined that the marital estate in a divorce proceeding does not include that portion of one spouse's personal injury settlement which represents compensation for pain and suffering or future earnings; rather, the marital estate includes only that portion of a judgment or settlement which diminishes the marital estate, e.g., items such as past wages and medical expenses. *Parde v. Parde, supra*. We granted the petition for further review to clarify the law regarding which portions of an injured party's personal injury or workers' compensation award should be included in the marital estate for purposes of property division in this equitable distribution jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Daniel A. Parde (husband) and the wife were married on December 11, 1976. The Pardes separated on January 5, 1997, and a decree of dissolution was entered on August 11, 1997. The evidence reveals that during the marriage, the husband worked 16 years for Burlington Northern Railroad Company. In the

scope of his employment, the husband was injured on three separate occasions in 1989 and 1990. As a result of these injuries to his lower back, the husband negotiated a settlement with Burlington Northern on August 26, 1992, a settlement memorialized by a "General Release Agreement" (Release). The husband was 40 years old at the time of the settlement.

The Release was negotiated pursuant to the Federal Employers' Liability Act (FELA). As part of the Release, the husband agreed that the injuries he sustained had permanently disabled him and would prevent him from ever returning to work for Burlington Northern. Additionally, at the time he signed the Release, the husband received a check for $148,364.16. This cash payment was expressly divided into two components: $54,101.70 for "time lost" between July 1, 1992, and May 31, 1996, and $98,892.30 to "other factors." The "time lost" component was allocated so that the husband could receive creditable service hours for the purpose of receiving railroad retirement benefits. Railroad retirement tax and railroad retirement board liens were deducted, resulting in the net cash payment of $148,364.16.

The Release also provided that Burlington Northern would arrange for payment to the husband of an annuity in the sum of $98,750 on September 1, 2002, the amount being payable notwithstanding the husband's death.

The primary issue at the trial court was whether the $98,750 amount remaining to be paid under the Release should be included or excluded from the marital estate. Likewise, the divisibility of the cash settlement is not contested on appeal; rather, it is the divisibility of the annuity which is at issue. The trial court found that the cash portion of the settlement received by the husband in 1992 was already reflected in the other assets of the parties which were divided pursuant to their settlement agreement. The parties stipulated to a nearly equal division of all other property, each receiving approximately $60,000 in net value. There was no express allocation in the Release regarding past wages or future earnings with respect to the $98,750 annuity. The husband sought to prove, through the testimony of Burlington Northern's claims representative Lori Savidge and the language of the Release itself, that the $98,750 annuity

represented compensation for loss of future earnings and was thus excludable from the marital estate.

Savidge's testimony did not provide a precise allocation of the settlement proceeds between loss of past wages, pain and suffering, and loss of future earnings. The following colloquy, however, occurred during the testimony regarding the settlement proceeds:

Q. [The husband's counsel] Ms. Savidge, when you negotiated this settlement and determined an amount to be paid, how much of it was based on economic loss?

A. I would say the majority of it. I would — I don't break it down, the figure, into so many dollars for future, so many dollars for pain and suffering, so many dollars for liability or contrib. [sic], but I can say the majority of it was based on the fact that he was not working for the railroad. He was a young man and disabled and he was going to lose some earnings down the road at least 20-some years.

The evidence also revealed that after the settlement, the husband attended and graduated from Southeast Community College, which prepared him to become a respiratory therapist. Child support calculations show that at the time of trial, the husband was making approximately $26,000 per year working as a respiratory therapist at Bryan Memorial Hospital. The record does not show the date of the husband's graduation or when he was first employed following the date of the Release.

The district court found that the entire amount of the settlement, both cash and annuity, was based upon injuries the husband received during the marriage of the parties and upon his income earned during the marriage, and determined that the entire settlement should be considered marital property. The husband appealed, assigning as error the district court's holding that the annuity was marital property. The Court of Appeals agreed and found that the district court abused its discretion in failing to exclude the annuity portion from the marital estate and modified the decree accordingly. See *Parde v. Parde*, 8 Neb. App. 242, 591 N.W.2d 783 (1999). The wife petitioned this court for further review, and we will narrowly review the Court of Appeals' determination that the amount due under the annuity

should be excluded from the marital estate. All other aspects of the Court of Appeals' judgment stand affirmed.

## ASSIGNMENTS OF ERROR

In her petition for further review, the wife specifically assigned as error (1) the Court of Appeals' finding that the district court abused its discretion in deciding that insufficient evidence had been presented to support an allocation of the annuity; (2) the Court of Appeals' ignoring *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985), and incorrectly applying *Mathew v. Palmer*, 8 Neb. App. 128, 589 N.W.2d 343 (1999); (3) the Court of Appeals' determining that because the testimony of Savidge was not contradicted by direct evidence, the evidence was necessarily not in conflict and, therefore, the court need not accord weight to the fact that the finder of fact heard and observed the witness and chose to reject such testimony; (4) the Court of Appeals' finding that since the lump-sum payment was reflected in the parties' marital property, it must necessarily be treated as àn allocation of the marital estate; (5) the Court of Appeals' determining what part of the entire settlement was marital or nonmarital in character, even though only the characterization of the annuity as marital property was assigned as error; (6) the Court of Appeals' failing to dismiss the appeal on the ground that the husband had accepted the benefits of the district court judgment; and (7) the Court of Appeals' failing to award attorney fees for the services of the wife's attorneys in the Court of Appeals.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999).

■ A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997).

## ANALYSIS

### BACKGROUND—PERSONAL INJURY AWARD AS MARITAL PROPERTY

We granted further review in this cause to clarify what has unnecessarily become a muddled area of the law—i.e., which portions of an injured party's personal injury or workers' compensation award should be included in the marital estate for purposes of property division. This court last dealt with the issue of one spouse's personal injury settlement being considered marital property in *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985).

The divorce in *Maricle v. Maricle* occurred a few years after the husband had been injured in a truck collision that left him permanently and totally disabled. In actions for damages arising out of the accident, the husband and wife received a $300,000 settlement. After attorney fees, this sum was divided so that the wife received 20-some thousand dollars for loss of consortium and the husband received the balance. When the couple divorced, the question presented to this court was whether the husband's personal injury settlement should be included in the marital estate for purposes of dividing the parties' property. Without discussing whether and what portions of such an award should be considered to be the separate property of the injured spouse, this court, sitting on a division panel, determined that the husband's entire settlement should be included in the marital estate. The court stated:

> In the present case equity requires that the proceeds from the settlement of the damage actions be included in the marital estate. The proceeds were not acquired by gift or inheritance, *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), nor were they assets held in a trust established by a third person, thereby rendering them not a part of the marital estate, *Essex v. Essex*, 195 Neb. 385, 238

N.W.2d 235 (1976). Furthermore, the proceeds from the settlement constitute the main asset and the primary source of income of the parties.

*Maricle v. Maricle*, 221 Neb. at 554, 378 N.W.2d at 857. Since deciding *Maricle v. Maricle* in 1985, we have not revisited the issue of how to divide one spouse's personal injury settlement or award upon dissolution of marriage.

In 1995, however, the Court of Appeals found itself confronted with a similar issue in *Gibson-Voss v. Voss*, 4 Neb. App. 236, 541 N.W.2d 74 (1995). That case involved the question whether one spouse's workers' compensation award should be included in the marital estate upon divorce. Noting that Nebraska is an equitable distribution jurisdiction and citing cases from other equitable distribution jurisdictions, the Court of Appeals articulated four factors to be considered in determining which portions of an award are marital property and which are separate property.

> [A] court must consider (1) the purpose of the award, e.g., whether it was made for lost earnings, loss of future earning capacity, or some other purpose; (2) the time period of any diminished earning potential or disability; (3) the nature and date of the underlying injury; and (4) the terms of the award.

*Id.* at 242, 541 N.W.2d at 78. The Court of Appeals concluded that an injured spouse's workers' compensation award should not be included in the marital estate to the extent that it compensates the injured party for loss of premarriage or postdivorce earnings. *Id.* In doing so, the Court of Appeals did not mention or discuss our holding in *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985).

Then, in 1999, the Court of Appeals decided *Mathew v. Palmer*, 8 Neb. App. 128, 589 N.W.2d 343 (1999). At the time of the parties' divorce in *Mathew v. Palmer*, the wife was a plaintiff in a pending medical malpractice suit alleging personal injuries from defective breast implants. The wife had also obtained a $100,243 settlement from a breach-of-privacy suit wherein a physician provided a newspaper with an x ray of the wife's breasts, and the newspaper published that x ray and identified the wife by name.

In deciding that the proceeds from neither of the wife's actions should be included in the marital estate, the Court of Appeals in *Mathew v. Palmer, supra*, considered two approaches employed in other jurisdictions: the mechanical approach and the analytical approach. Under the mechanical approach, all the moneys realized from a personal injury action are placed in a marital estate. Meanwhile, under the analytical approach, only those portions of a personal injury award that represent compensation for past wages, medical expenses, and other items which diminish the marital estate are included within the marital estate. *Id.*

In *Mathew v. Palmer, supra*, the Court of Appeals correctly acknowledged that the existing jurisprudence in Nebraska would place our state among the mechanical approach jurisdictions. It accurately conveyed the facts and holding in *Maricle v. Maricle, supra*, wherein this court held that the husband's *entire* personal injury award should be placed in the marital estate. Nevertheless, the Court of Appeals concluded that Nebraska now uses the analytical approach in determining what should be considered as separate property of the injured spouse and analyzed the division of the parties' property accordingly. In *Parde v. Parde*, 8 Neb. App. 242, 591 N.W.2d 783 (1999), the Court of Appeals then cited *Mathew v. Palmer, supra*, for the same proposition.

■ Because obvious confusion exists regarding the extent to which an injured party's personal injury or workers' compensation award should be included in a marital estate, we now revisit the issue to resolve the apparent conflict in the law. In determining what assets constitute the marital estate and how the property should be divided, we note that Nebraska, by statute, is an equitable property distribution jurisdiction. Neb. Rev. Stat. § 42-365 (Reissue 1998). In equity, there is rarely one tidy answer that fits every size and type of problem that courts are called upon to resolve. It is precisely for this reason that a principled *approach* to this issue should be consistent with the basic policy rule that the marital estate should include only property created by the marital partnership. See *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998).

The Court of Appeals, in *Mathew v. Palmer, supra*, correctly observed that there are two general approaches to this issue. In

the analytical approach, courts analyze the nature and underlying reasons for the compensation. "The core of the analytic approach is its recognition that the classification of the award depends upon the nature of the underlying loss." Brett R. Turner, Equitable Distribution of Property § 6.18 at 390 (2d ed. 1994). One court explains the analytical approach's rationale:

"Nothing is more personal than the entirely subjective sensations of agonizing pain, mental anguish, embarrassment because of scarring or disfigurement, and outrage attending severe bodily injury. Mental injury, as well, has many of these characteristics. Equally personal are the effects of even mild or moderately severe injury. None of these, including the frustrations of diminution or loss of normal body functions or movements, can be sensed, or need they be borne, by anyone but the injured spouse. Why, then, should the law, seeking to be equitable, coin these factors into money to even partially benefit the uninjured and estranged spouse? . . . The only damages truly shared are those discussed earlier, the diminution of the marital estate by loss of past wages or expenditure of money for medical expenses. Any other apportionment is unfair distribution."

Turner, *supra* at 389-90 (quoting *Amato v. Amato*, 180 N.J. Super. 210, 434 A.2d 639 (1981)).

By contrast, a minority of courts apply the mechanical approach. These courts note that personal injury awards are not neatly categorized under the traditional definitions of separate property and therefore hold that personal injury awards are entirely marital property. Turner, *supra*. With little analysis, that is exactly the approach this court adopted in *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985).

Upon further consideration, however, we think the analytical approach is much more consistent with the basic rule that the marital estate should include only property created by the marital partnership, and we now adopt that approach. Compensation for purely personal losses is not in any sense a product of marital efforts. We, therefore, hold that compensation for an injury that a spouse has or will receive for pain, suffering, disfigurement, disability, or loss of postdivorce earning capacity should not equitably be included in the marital estate. On the

other hand, compensation for past wages, medical expenses, and other items that compensate for the diminution of the marital estate should equitably be included in the marital estate as they properly replace losses of property created by the marital partnership. By so holding, we overrule *Maricle v. Maricle, supra,* insofar as it adopted the mechanical approach to the division of a personal injury award in a subsequent divorce.

We add, however, that the burden of proof to show that property is nonmarital remains with the person making the claim. See *Shockley v. Shockley,* 251 Neb. 896, 560 N.W.2d 777 (1997). Thus, in those cases where the party making the claim of nonmarital property fails to prove that all or portions of an injury compensation are for purely personal losses or loss of future earning capacity, the presumption remains that the proceeds from the personal injury or workers' compensation settlement or award are marital property. See § 42-365.

### EVIDENCE REGARDING FELA SETTLEMENT

The wife claims that even if the analytical approach was to be applied to the instant case, the husband failed to carry his burden of proving the nonmarital character of the $98,750 annuity. We disagree. After reappraising the evidence and reaching our own independent conclusions by applying the analytical approach to our de novo review of the record, we determine that the Court of Appeals correctly concluded that the trial court abused its discretion in treating the $98,750 annuity as marital property and dividing it between the husband and the wife.

Our de novo review of the record discloses that the husband received his last paycheck from Burlington Northern on June 15, 1992. The husband and Burlington Northern executed the Release on August 26. Consequently, the husband was owed past wages for the time period between June 15 and August 26. Based upon a $31,000 per year income with Burlington Northern, wages for that period were roughly $6,450. Subtracting that sum from the total settlement figure of $251,744 leaves a remaining sum of $245,294 as compensation for loss of future earnings or pain and suffering as of the Release date.

The marriage, however, continued for approximately 5 years after the settlement was made and before the August 1997

divorce decree. The Court of Appeals correctly pointed out that a portion of the remaining $245,294, to the extent that it represented "future" lost wages in August 1992, was obviously "past" lost wages by August 1997 when the divorce decree was entered. We must determine whether the husband proved what portion of the $245,294 is attributable to pre-August 1997 lost wages (marital property) versus postdivorce loss of future earnings (nonmarital property).

The Court of Appeals analyzed the evidence two ways:

> [The husband] and Burlington [Northern] allocated the sum of approximately $54,000 for "time lost" for the time period from July 1, 1992, through May 31, 1996. . . .
>
> If we accept the $54,000 allocation and additionally assume that [the husband] earned no wages between May 31, 1996, and the date of the divorce decree (an assumption favoring [the wife] as it is clear that at some point [the husband] was reemployed), approximately another $35,000 would be attributable to lost wages, again based on a $30,000 annual income. This results in a total amount of lost wages for the period of July 1992 through August 1997 of roughly $89,000 ($54,000 plus $35,000), leaving approximately $156,500 of the total settlement remaining as compensation for [the husband's] future losses as of the time of the divorce.
>
> If we entirely ignore the Release's allocation of [the husband's] lost wages for the stated time period, we reach a similar conclusion. At the time of this settlement, [the husband's] worklife was approximately 22 years. If we simply divide the $245,294 balance remaining as of August 1992 by 22 years, thus attributing that entire amount to future lost wages and none of it to nonmarital pain and suffering, one arrives at a figure of slightly over $11,000 per year. This establishes an annual figure designed to compensate for [the husband's] lost earnings or diminished capacity from age 40 in August 1992 through age 62. At that rate, some $55,000 to $60,000 of the remaining compensation would be amortized over the approximately 5-year period the parties remained married after the Release date. Using the $60,000 figure,

approximately $185,500 of the settlement remained as compensation for [the husband's] postdivorce loss of wages or diminished earning capacity.

*Parde v. Parde*, 8 Neb. App. 242, 251-52, 591 N.W.2d 783, 789 (1999).

We agree. Moreover, even if we assumed, despite evidence to the contrary, that the husband had *no* earnings for the 5-year period in question and that a full $31,000 was lost to the marital estate during that time, only $155,000 of the total settlement amount could be attributable to the past lost wages as of the time of the decree. This hypothetical calculation is absurd in light of the evidence that the husband *did* return to work as a respiratory therapist sometime in that 5-year period at the rate of $26,000 per year. Nevertheless, even using this calculation, nearly $90,300 would remain as compensation for the husband's postdivorce lost earnings.

Regardless of the analysis employed, the bottom line is this. The money received in August 1992 at the time the Release was signed—some $152,994, less taxes and a lien—went into the marriage and is now, according to the trial court's finding, reflected in the parties' remaining assets. That sum more than adequately compensated the marital estate, in advance, for any losses it might have suffered due to the husband's lost wages during the marriage. Indeed, as the Court of Appeals noted, it might be argued that the marital estate has already received a windfall. The district court's conclusion that the remaining $98,750 annuity should also be considered part of the marital estate is clearly untenable and deprives the husband of a substantial right and a just result. See *Bondi v. Bondi*, 255 Neb. 319, 586 N.W.2d 145 (1998).

In reaching this conclusion, we have considered the wife's argument that the husband failed to meet his burden of proof because he could not establish, by direct evidence, that the remaining unpaid amount through the annuity carried a specific designation showing it was for a nonmarital purpose. While the husband's evidence did not consist of a settlement document with a tidy breakdown of each dollar of the settlement into well-defined categories, the testimony of Savidge, when considered with the language of the Release itself and the settlement as a

whole, proved what portion of the entire settlement is to be reasonably considered as lost wages during the marriage and, thus, as a marital asset. By proving what portion of the entire settlement should be considered as a marital asset, the husband has necessarily proved what portion could properly be viewed as nonmarital property. The Court of Appeals was correct in its determination.

We have considered the wife's other assignments of error and find them to be without merit.

## CONCLUSION

The Court of Appeals determined that the district court abused its discretion in not setting aside to the husband, as nonmarital property, the remaining $98,750 due under his settlement with Burlington Northern. The Court of Appeals, therefore, ordered that the district court's decree be modified to set that sum aside to the husband as his sole and separate property. For the foregoing reasons, we affirm the judgment of the Court of Appeals.

AFFIRMED.

STEPHAN, J., not participating.