LOUISE FOLTYN, APPELLEE AND CROSS-APPELLANT, V. ALOIS FOLTYN, APPELLANT AND CROSS-APPELLEE.

141 N. W. 2d 433

Filed April 1, 1966. No. 36022.

McCulloch, Leigh & Koukol and Joseph V. Benesch, for appellant.

Warren D. Sweiback and Monsky, Grodinsky, Good & Cohen, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

This is an appeal from a division of property made in a divorce decree. The defendant, Alois Foltyn, contends that the award of property to him is insufficient and he has appealed to this court. The plaintiff, Louise Foltyn, asserts that the award of property to her is insufficient and she has cross-appealed.

The controlling rule of law has been so often announced by this court that we cite only some cases which support it. Francil v. Francil, 153 Neb. 243, 44 N. W. 2d 315; Matson v. Matson, 175 Neb. 60, 120 N. W. 2d 364; Loukota v. Loukota, 177 Neb. 355, 128 N. W. 2d 809.

The parties were married on November 27, 1955. They were in their early fifties at the time of their marriage. It was the third marriage for each. The petition for divorce on which the decree was granted was filed on April 14, 1964, and trial had thereon in the district court on August 24, 26, and 27, 1964. Several divorce petitions had been filed previous to the one here involved, the first being filed in March 1957, none of which was tried. Their married life after the first year or so had indeed been a rocky one. The only question raised by the appeal and the cross-appeal is whether or not the division of property made by the trial court is equitable under all the circumstances.

Each of the parties owned an automobile. Louise was the owner of household furniture which went into the

home, and Alois was the owner of carpenter tools which he used in his vocation of cabinet maker. The value of this property is not shown. The award of the foregoing property by the district court to the parties will not therefore be disturbed nor considered by this court.

A short time prior to the marriage Louise had $3,007.96. After a discussion with Alois before their marriage she purchased Lots 25 and 26, Block 12, Albright's Annex, an Addition to South Omaha, now Omaha, Douglas County, Nebraska, for $1,500, on which the parties intended to build a home after their marriage. The remaining $1,507.96 subsequently went into the home. Louise worked during most of the time during the marriage in a drapery shop belonging to her two sons by her first marriage, George and Donald Patach, for which she received approximately $50 per week. This income went for the payment of household expenses, or into the cost of the new home, or both. Louise testified that she sold her former home in June 1955 to her son George and his wife. The deed shows the consideration to have been "One Dollar, Love and Affection." Louise, George, and his wife testified, however, that the actual consideration was an oral agreement to pay $5,000 for the home. Exhibit 19, a loose-leaf record headed "House payments," allegedly kept by George Patach's wife, was offered in evidence. This record shows that on the first day of every month from and after November 1, 1955, to August 1, 1964, excepting one hiatus of 7 months, a payment was made. The amount of each payment was $40, except 11 for $50, 1 for $30, and 4 for $20. The record does not indicate that the entries were made simultaneously with the payments on the first day of each month. The purported payments total $3,980 and show the amount remaining due as $1,020. The evidence is that each payment was made on the first day of each month, they were all paid in cash, no receipts were given, and no record kept by Louise. Alois testified that he knew nothing of any such cash payments during

the 8 years they were allegedly made. Louise admits that she never told Alois that such payments were being made, or that they were being used to pay for the new house. The assertion that these cash payments had been made to Louise totalling $3,980 and applied on the cost of the house is an incredible statement that the record does not support.

At the time of the marriage Alois was employed by Disbrow & Company. He had been so employed for 13 years at the time the divorce was granted. He testified that his pay checks were turned over to Louise and that she had deposited them in his, her, or their accounts with the Commercial Savings & Loan Association. The record shows that Alois did purchase a new automobile in 1959, and a new stove, washing machine, and television set. It appears that all of the earnings of the parties, except for the foregoing purchases, went into living expenses and the cost of the new home. The evidence shows that from December 1959 to August 28, 1963, his pay checks endorsed by Louise amounted to $6,998.64. Alois stated that all of his earnings, amounting to more than $3,600 a year for 9 years, went into living expenses and the new home, and that he has nothing left other than current pay checks.

As before stated, Louise purchased the two lots for $1,500 and paid for them prior to the marriage. On May 12, 1956, they commenced the construction of the house. The house was laid out on the ground by Donald Patach and the labor in constructing the house was largely performed by Alois, with the assistance of George and Donald Patach. The record shows that Alois built cabinets for George and Donald Patach for their homes and office. The evidence sustains a finding that the building of the home was a family enterprise in which George and Donald Patach exchanged work with Alois. The parties found it necessary to borrow sums of $5,000 and $800 to complete the house. The $800 has been paid and the $5,000 obligation has been reduced to $2,658.12.

The house was built on the north 66 feet of Lots 25 and 26. An expert appraiser valued the land at $3,500 and the house at $11,750, a total valuation of $15,250. He fixed the value of the south 62 feet at $1,750. Another real estate expert valued the north 66 feet of Lots 25 and 26 at $1,400 and the south 62 feet at $1,200. He valued both lots and the house at $13,500. After a consideration of all the evidence, we fix the value of the north 66 feet and the house at $14,000, and the value of the south 62 feet at $1,500. The north 66 feet and house thereon are subject to a mortgage of $2,658.12, leaving a net value of $11,341.88. Louise at the time of the trial had a bank account of $500, and $1,020 due from her son George. Alois had pay checks and cash in the amount of $381.21. We think the net assets of the parties consist of the south 62 feet of Lots 25 and 26 valued at $1,500; the north 66 feet of Lots 25 and 26, including the home thereon, valued at $11,341.88; cash in possession of Louise $500; and cash in possession of Alois $381.21. We do not consider the item of $1,020 allegedly due Louise from her son George Patach.

The evidence shows further that the parties in settling a previous divorce action entered into an agreement with reference to the ownership of the residence property in May of 1959. By the terms of that agreement Louise conveyed Lots 25 and 26 to Alois and herself as tenants in common. The agreement also provided for a settlement of a dispute over the bank accounts of the parties, and the funds in said accounts were distributed in accordance with the agreement.

We conclude that the trial court correctly awarded the household furniture and her automobile to Louise. The award of his automobile and his carpenter tools to Alois is correct. The division of net assets should be on a 60-40 basis. Louise should have the equivalent of $7,720 and the cash in her possession on the day of the trial, and the defendant should have the equivalent of $5,100 and the cash in his possession on the day of trial.

If the values of the real estate are over or undervalued, in case a sale is required, the awards shall be proportionately decreased or increased, as the case may be. We find no equity in the cross-appeal of the plaintiff. The judgment of the district court is reversed and the cause remanded to the trial court with instructions to enter a judgment in accordance with this opinion as practically as it can be done.

The wife, Louise, requests an allowance for the services of her attorney in this court. The record shows that the parties have paid counsel $250 each for services rendered. The trial court allowed plaintiff $500 for services in that court. We make no further allowance of attorney's fees in this court. Each party will pay his own costs of this appeal.

REVERSED AND REMANDED WITH DIRECTIONS.