DALLAS L. SHEARER, APPELLANT, V.
LYNNE R. SHEARER, APPELLEE.
700 N.W.2d 580

Filed July 22, 2005. No. S-03-680.

Susan C. Williams for appellant.

R. Bradley Dawson, of Dawson & Piccolo, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Dallas L. Shearer filed a petition to dissolve the marriage between Dallas and his wife, Lynne R. Shearer. The parties entered into a stipulation and agreement, disposing of their property but

reserving the division of a portion of Dallas' railroad disability benefits for the district court. At trial, Dallas argued that the benefits should be awarded solely to him, since the marital estate benefited considerably from proceeds he received during the marriage from a settlement with Union Pacific Railroad Company (Union Pacific) for an injury he sustained while working for Union Pacific. The district court disagreed and divided the benefits at issue equally between the parties. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Dallas and Lynne were married in April 1971. Dallas began working for Union Pacific in late 1975 and continued that employment until he was injured on the job in 1992. Dallas' injury left him occupationally disabled; in other words, he was unable to return to the work he had been trained to do for Union Pacific. Dallas filed a claim against Union Pacific under the Federal Employers' Liability Act and reached a settlement in which he was awarded $525,000 and an additional $50,000 for use in establishing a leatherworking business.

In addition, Dallas continues to receive disability benefits under the Railroad Retirement Act. Annuities under the Railroad Retirement Act consist of independent tiers. Tier I is calculated using Social Security benefit formulas and includes earnings both in the railroad industry and in employment covered by the Social Security Act. Tier II is based on railroad retirement earnings alone. Dallas receives benefits of $1,361 per month under tier I and $398 per month under tier II. Upon reaching retirement age, Dallas' benefits will convert to those provided for railroad retirees. Dallas also receives health insurance through Union Pacific at a monthly cost to him of $275.

Lynne worked at Simon Construction from 1983 through 1996. When the company was sold in 1994, the employees of the company received a share of the profits; Lynne received $134,000 from the sale. When Dallas' injury prevented him from returning to work at Union Pacific, he and Lynne established a leatherworking business called Mill Iron "S" Company.

In 2002, Dallas filed a petition for dissolution of marriage. Dallas and Lynne subsequently entered into a stipulation and agreement prior to trial. In the stipulation, the parties agreed to

waive alimony, arranged for the division of marital property, and divided responsibilities with respect to insurance, debts, and attorney fees. The stipulation specifically reserved the disposition of Dallas' tier II annuity benefits for the district court.

A trial was held, and the court entered a decree of dissolution. The court approved the parties' stipulation and agreement and ordered the tier II benefits to be divided equally. The court discussed several factors in support of its decision: Dallas failed to sustain his burden of proof to show that the tier II benefits are nonmarital and should be awarded solely to him; this was a marriage of long duration; Dallas' tier I benefits were roughly equivalent to Lynne's monthly income; during the marriage, Lynne left two jobs at Dallas' request; Dallas is still capable of working and could earn up to $400 per month without affecting his railroad benefits; and both parties experienced "windfalls" as a result of Dallas' Union Pacific settlement and Lynne's employment bonus.

Dallas filed a motion for new trial, which the court overruled. Dallas appeals.

## ASSIGNMENTS OF ERROR

Dallas assigns, restated, that the district court erred in (1) equally dividing his tier II benefits, (2) considering Lynne's bonus in its justification for equally dividing his tier II benefits, and (3) considering the respective earning capacities of Dallas and Lynne in dividing Dallas' tier II benefits.

## STANDARD OF REVIEW

 The division of property is a matter entrusted to the discretion of the trial judge, which will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002).

 A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly

untenable, unfairly depriving a litigant of a substantial right and a just result. *In re Guardianship of Robert D.*, 269 Neb. 820, 696 N.W.2d 461 (2005).

## ANALYSIS

Neb. Rev. Stat. § 42-365 (Reissue 1998) provides for the equitable division of marital property, based upon

the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

The parties may enter into a written agreement providing for the disposition of their property. Neb. Rev. Stat. § 42-366(1) (Reissue 2004). Such an agreement is binding on the court unless the agreement is found to be unconscionable. § 42-366(2).

In the present case, the parties entered into a stipulation and agreement for the disposition of their property but reserved the allocation of Dallas' tier II benefits for the court. In its decree, the court approved the stipulation and ordered disposition of the parties' property as called for within the stipulation. The court was then left with the question whether Dallas' tier II benefits should be divided between the parties and, if so, how they should be divided.

In the past, courts were prohibited from awarding one spouse an interest in benefits to which the other spouse became entitled under the Railroad Retirement Act. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979). The act has since been amended, and the Railroad Retirement Board has published regulations that require the board to honor a decree of divorce characterizing tier II benefits as property subject to distribution. 45 U.S.C. § 231m(b)(2) (2000); 20 C.F.R. § 295.1 (2005).

Dallas assigns that the district court erred in dividing his tier II benefits, thereby depriving him of a fair and equitable property division. He argues that he is entitled to the entire amount of his tier II benefits in order to "make up" for the windfall realized by the marital estate when he collected settlement funds from Union Pacific, some of which Dallas claims could

have been excluded from the marital assets as compensation for pain and suffering. We note that Dallas did not present evidence to the district court to establish upon what basis his tier II benefits were calculated and that he did not argue in his appellate brief that his tier II benefits should not have been included in the marital estate because they were awarded for disability. As we stated in *Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657 (1999), the burden of proof to show that property is nonmarital remains with the person making the claim. Thus, our analysis is confined to Dallas' argument with respect to his settlement funds.

### STIPULATION AND WAIVER

Dallas testified that he received $575,000 in his settlement with Union Pacific. Of that amount, he testified that $182,000 went to satisfy legal fees; $41,000 and an additional $5,225 were apportioned for "time lost" and "extra years" needed to qualify for disability benefits from Union Pacific; and $50,000 was used to start Mill Iron "S" Company. Dallas argues that the balance of approximately $296,000 was for pain and suffering and, thus, could have been excluded from the marital assets and reserved for Dallas. He cites *Parde v. Parde*, 258 Neb. at 109, 602 N.W.2d at 663, in support of his argument: "[C]ompensation for an injury that a spouse has or will receive for pain, suffering, disfigurement, disability, or loss of postdivorce earning capacity should not equitably be included in the marital estate." In his brief, Dallas argues that $293,792 of the $296,000 for pain and suffering can be traced to marital assets, including real estate, personal items, money markets, and expenses related to Mill Iron "S" Company. As a result, Dallas argues, the marital estate received a windfall through his settlement moneys.

In contrast, Lynne argues, inter alia, that by entering into the stipulation and agreement before trial in which the parties disposed of all marital property except for the tier II benefits, Dallas waived issues with respect to the nonmarital nature of his settlement proceeds, and that if Dallas wished to have certain assets designated as nonmarital, he should have litigated those issues before the court.

Pursuant to § 42-366, upon marital separation, parties may enter into a written agreement for the disposition of their property,

and the terms of such an agreement are binding on the court unless found to be unconscionable. Parties are bound by stipulations that are voluntarily made, and relief from such stipulations is warranted only under exceptional circumstances. *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991).

In this case, the parties entered into the stipulation and agreement, in which they agreed upon the disposition of all of their property except Dallas' tier II benefits. In its decree, the court specifically found that the terms of the agreement were not unconscionable, approved the agreement, and ordered disposition of the parties' property as called for within the agreement. However, as the basis of his argument that the district court erred in dividing his tier II benefits between the parties, Dallas relies on the classification and disposition of his settlement proceeds. In other words, Dallas' argument as to the disposition of his tier II benefits is based upon the allegedly unbalanced distribution of other property, the division of which he stipulated to as fair and equitable and of which the court approved.

In *Laude v. Laude*, 600 N.W.2d 848 (N.D. 1999), the Supreme Court of North Dakota dealt with a similar issue. In *Laude*, the parties agreed to a marital property division in which the wife waived all right, title, interest, and claim to the husband's pension. In addition, the parties expressly stipulated to submit the issue of spousal support to the trial court. The trial court entered a judgment, incorporating the parties' stipulation and concluding that the wife was entitled to permanent spousal support of $800 per month, to be reduced to $300 per month upon the husband's retirement. The husband appealed the judgment, arguing that the spousal support award was an improper claim against his pension, to which the wife had waived any right. *Id.*

The North Dakota Supreme Court discussed the importance of equitable property agreements and peaceful resolutions of divorce disputes and further stated: " '[T]o the extent that competent parties have voluntarily stipulated to a particular disposition of their marital property, a court ordinarily should not decree a distribution of property that is inconsistent with the parties' contract.' " *Id.* at 850. Although the wife waived any right to the husband's pension, the court stated that the parties also agreed to submit the issue of spousal support to the trial

court, including the amount to be paid and the required duration of such payments. The court concluded that although evidence at trial suggested that the husband's pension could be his sole source of income during retirement, the trial court had not awarded the wife a portion of those proceeds. Rather, the support payments could be satisfied with other income or property. *Id.* The court explained that the parties could have stipulated to postretirement spousal support or agreed that the husband's pension income could not be used in determining the support award; however, having left the issue of all spousal support to the trial court, the court concluded that the trial court had not erred in awarding postretirement spousal support. *Id.*

The same principles are applicable to the circumstances in the present case. Specifically, the stipulation and agreement entered into by Dallas and Lynne provided for the disposition of all of their marital property and reserved the sole issue of Dallas' tier II benefits for the district court. Therefore, the disposition of Dallas' settlement proceeds in the form of marital property was determined in the stipulation, and a court should not order a distribution of property inconsistent with that voluntary stipulation. Consideration of the classification of Dallas' settlement proceeds and whether or not those moneys were properly included in the marital estate, as justification for concluding that the tier II benefits would not be divided, is inconsistent with the stipulation settling the division of such assets. Dallas is bound by that stipulation and waived the issue of his settlement proceeds; consequently, his first assignment of error is without merit.

### CONSIDERATION OF LYNNE'S BONUS

Dallas also assigns that the district court erred in considering Lynne's bonus in the disposition of the tier II benefits. Although it is somewhat difficult to decipher Dallas' argument with respect to this assignment, he appears to argue that there was no evidence that Lynne's bonus was nonmarital property, providing a windfall to the marital estate. Thus, Dallas argues that the court erred in comparing marital property (Lynne's bonus) to nonmarital property (Dallas' settlement proceeds), finding that the windfall provided by the bonus effectively canceled out that of the settlement proceeds. However, we have already determined that

Dallas effectively stipulated to the division of property acquired with his settlement proceeds as part of the marital estate. Specifically, the court did not compare marital property and non-marital property, as both Lynne's bonus and Dallas' settlement proceeds were divided as marital property in the stipulation signed by the parties and approved by the court. Thus, Dallas' second assignment of error is without merit.

### CONSIDERATION OF EARNINGS

Dallas' assignment with respect to the court's consideration of the parties' earning capacities is equally without merit. He argues that the court's consideration of earnings operated as a "back-door" alimony award, contrary to the stipulation of both parties to waive alimony.

Section 42-365 provides that a court may order division of property as is reasonable, considering factors such as the parties' circumstances, the duration of their marriage, and the contributions of each party to the marriage. This court has specifically stated that courts may consider earning abilities of the parties in making a division of property in a divorce case and, further, has indicated that courts may consider all facts pertinent in reaching an equitable property division. *Sees v. Sees*, 188 Neb. 769, 199 N.W.2d 496 (1972); *Foltyn v. Foltyn*, 180 Neb. 42, 141 N.W.2d 433 (1966).

A trial court may consider the earnings of the parties in determining a fair and equitable division of property. Such consideration, as permitted by law, does not render the resulting property division a back-door alimony award. Therefore, the district court did not err in considering the parties' earnings in its decision to divide the tier II benefits equally.

### CONCLUSION

Upon our de novo review of the record, we conclude that the district court did not abuse its discretion in dividing Dallas' tier II benefits equally between the parties or in overruling Dallas' motion for new trial. The judgment of the court is affirmed.

AFFIRMED.