IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BURNS V. BURNS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL P. BURNS, APPELLEE AND CROSS-APPELLANT,

V.

KERRY E. BURNS, APPELLANT AND CROSS-APPELLEE.

Filed March 10, 2015.    No. A-13-1053.

Appeal from the District Court for Adams County: JAMES E. DOYLE IV, Judge. Affirmed in part, and in part reversed and vacated.

Matt Catlett for appellant.

Robert M. Sullivan, of Sullivan Shoemaker, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

Michael and Kerry Burns were divorced in 2004. A modification of their divorce decree occurred in 2010. In 2011, Kerry filed a complaint in the Adams County District Court seeking to modify child support and parenting time, and also seeking reimbursement for past medical expenses. Michael counterclaimed that Kerry should be held in contempt for her failure to comply with past court orders. The parties signed a "Memorandum of Understanding" ("agreement") on October 8, 2012. Over Kerry's objection that the agreement was inadmissible as evidence of settlement negotiations, the district court entered an order on April 22, 2013, holding that the agreement should be received as evidence, and that it was fair, reasonable, and not unconscionable, and that it was in the best interests of the minor children. The court determined that the agreement was a settlement agreement between the parties which by its terms resolved all pending matters in dispute between the parties and that any requests for relief not specifically granted by the terms of the court's order (and the incorporated agreement) were

- 1 -

denied and dismissed. Kerry appealed, and this court remanded for inclusion of a child support calculation. Following entry of the district court's order on remand, Kerry appealed and Michael cross-appealed. We affirm in part, and in part reverse and vacate.

BACKGROUND

Kerry filed a "Complaint for Modification of Decree" on October 31, 2011, wherein she alleged that the decree dissolving the parties' marriage was entered on May 10, 2004, and had been amended on August 18, 2010. Kerry sought an increase in child support, which the record reflects was previously modified from $1,041 (original decree) to $1,260 per month (August 18, 2010 modification) for the three minor children. Kerry had legal and physical custody of the children.

Michael filed an "Answer and Counterclaim" on December 2, 2011, admitting that his earnings had increased, but generally denying the relief requested by Kerry. Michael's counterclaim alleged that Kerry had not complied with the decree and parenting plan and requested that the court find her to be in contempt. An "Amended Answer and Counterclaim" was filed on March 30, 2012, which included an additional basis for finding Kerry in contempt of court.

On April 20, 2012, Kerry filed an "Amended Complaint." That amended pleading continued to request an increase in child support (retroactive to November 1, 2011), but also requested that the prior $100 deviation (credit for transportation) to Michael's child support obligation be eliminated. Kerry also added a request to modify the parties' existing parenting plan. The amended complaint indicated that the three minor children (ages 17, 15, and 10 at the time) were involved in academic and extracurricular activities in Wichita, Kansas, where they resided with Kerry, and that Michael's parenting time interfered with those activities. In addition to some adjustments to summer parenting time, Kerry was requesting that Michael, who resided in Sutton, Nebraska, exercise his school year weekend parenting time (excluding holidays) in Wichita only. Kerry sought reimbursement of $6,000 from Michael for health insurance coverage Kerry provided for the children when she and the children were living in Garden City, Kansas, from 2004 to 2008. Kerry also sought reimbursement from Michael for two orthodontic bills incurred by one of their children: $1,439 in 2009 and $1,871.35 in 2011.

On August 31, 2012, a journal entry was filed by the district court sustaining Michael's motion to compel discovery and setting trial for October 23.

On October 8, 2012, the parties executed the agreement in which the parties agreed: (1) that child support of $1,750 per month would commence November 1, 2011; (2) the $100 per month reduction [for transportation costs] would continue for a net [child support] of $1,650 per month retroactive to November 1, 2011; (3) that cell phone communications (including text messages) would be unhindered between Michael and the children; (4) the 80% reduction in child support for September of each year would continue to apply; (5) that Michael would pay Kerry $6,000 within 30 days to resolve all monetary disputes; (6) that Kerry was in contempt with regard to the parenting plan; (7) to certain changes to the parenting plan (not relevant to the present appeal); (8) that the agreement "will settle all pending matters and both parties will file Motions to Dismiss;" (9) that each party would pay their own fees and costs, and Michael would

dismiss his motion for sanctions; (10) that nothing in the agreement modified any other terms of previous orders in effect; (11) that Kerry or other family members could transport the children; (12) that the parties would continue to communicate by email with no obligation to copy legal counsel or other third parties; (13) to an attached holiday schedule; and (14) that Kerry's counsel would prepare a stipulation, joint dismissal and proposed order.

Kerry's attorney filed to withdraw on December 6, 2012, and an order granting the same was filed on December 11.

On January 7, 2013, Michael filed a "2nd Amended Answer and Counterclaim," that generally denied the amended assertions and relief sought by Kerry, and which again set forth alleged grounds upon which he was seeking to have Kerry held in contempt of prior court orders.

On March 18, 2013, the case was assigned to a new district court judge by order of the Nebraska Supreme Court.

On April 11, 2013, Kerry, with new legal counsel, filed a "Motion for Leave to Amend;" this motion was scheduled to be heard April 18. On April 15, Michael filed a motion for an order compelling Kerry to comply with the terms of the October 8, 2012, settlement agreement, which agreement Michael attached as an exhibit to the motion. Michael's motion also represented that Kerry's former counsel was drafting the stipulation and order when Kerry terminated his services, following which she represented herself until retaining new counsel. Kerry's new counsel filed a "Motion to Strike" on that same day, claiming that Michael's motion improperly presented the court with inadmissible evidence. These matters were also scheduled to be heard on April 18, 2013.

On April 18, 2013, an "Order on Preliminary Conference" was entered scheduling the matter for final hearing on July 23. However, that hearing was subsequently cancelled by the district court because it decided all issues in its order entered a few days later on April 22. According to that order, during the April 18 hearing, the court took up the motions discussed above: (Kerry's motion for leave to amend; Michael's motion to compel compliance with the October 8, 2012, agreement; and Kerry's motion to strike Michael's motion). At that hearing, Michael offered Exhibit 100 (Michael's affidavit) and Exhibit 101 (the agreement). Kerry objected to both exhibits, citing to Neb. Rev. Stat. § 27-408 (Reissue 2008). Kerry argued that Exhibit 101 was evidence of compromise and settlement negotiations, and should therefore be excluded pursuant to § 27-408. Michael disagreed, arguing that Exhibit 101 was an agreement, not a recitation of offers in compromise or evidence of negotiations. In the trial court's April 22, 2013, order, it concluded that Exhibit 101 was a "settlement agreement and not merely a record of negotiations or of offers in compromise and settlement," and it received the exhibit. The court also received those portions of Exhibit 100 which laid the foundation for the admission of Exhibit 101. After considering the law applicable to property settlement agreements and general rules of contract, the trial court concluded that "Exhibit 101 is a settlement agreement between the parties which by its terms resolved all pending matters in dispute between the parties," and that "[i]n the absence of proof that the agreement is unconscionable or obtained by fraud, duress, or undue influence, it is enforceable." The trial court then determined that the agreement was fair, reasonable, and not unconscionable, and that it was in the best interests of the minor children. Exhibit 101 was attached and incorporated into the court's order.

The trial court then specifically identified the various pleadings filed by the parties commencing with Kerry's October 31, 2011, complaint to modify, and continuing up through her April 15, 2013, motion to strike, and stated that "[a]ny requests for relief made in the above enumerated filings which are not specifically granted by the terms of this order or Appendix A, are denied and dismissed." The court cancelled the July 23 hearing and dissolved all obligations imposed on the parties in the April 18 preliminary conference order.

Kerry appealed on April 30, 2013. On June 5, without deciding any of the issues on appeal, this court remanded the matter to the district court, stating:

> This case is remanded to the district court with directions to prepare the applicable child support worksheets upon which the determination of the child support obligation is based. See *Rutherford v. Rutherford*, 277 Neb. 301, 761 N.W.2d 922 (2009). The child support stipulation, adopted by the court, does not excuse the *Rutherford* requirement of an attached child support worksheet.

On June 28, 2013, before the mandate from this court issued, Michael filed an "Application to Modify" wherein he requested modification of custody, child support, and visitation. This court's mandate then issued on July 15.

In an order entered August 12, 2013, the district court noted that the court "spread the July 15, 2013, mandate of the court of appeals on the records of the court." On August 23, Kerry filed a motion seeking to vacate the April 22 order, and seeking to reschedule trial.

In an order entered October 15, 2013, the trial court indicated that the July 15 mandate was spread on its records on August 8, and on that same day, the trial court also conducted a hearing to establish a schedule for the parties to set forth "their positions concerning the status of this case after the mandate from the Court of Appeals." In the October 15 order, the trial court determined that the post-mandate filings of the parties were outside the court's jurisdiction on remand. The trial court ordered the parties to submit child support calculations "and any supporting financial information which each party contends should be adopted to explain the child support calculation set forth in the parties' agreement, which was marked as Appendix A and incorporated in the court's April 22, 2013 order," and the court further cancelled "all hearings scheduled in the case."

On October 31, 2013, the district court entered an "Order on Remand from the Nebraska Court of Appeals." In that order, the court reiterated its conclusions from its April 22 order that the settlement agreement between the parties was enforceable, fair and reasonable, not unconscionable, and was in the best interests of the minor children. The child support calculations submitted by Kerry resulted in an obligation ranging from $1,875 to $2,149 per month for three children; the child support calculations submitted by Michael ranged from $1,730 to $1,750 per month. The court adopted the child support worksheet for $1,750 per month submitted by Michael "because it most accurately reflects the income of the parties," but then went on to address the $100 monthly deviation that the parties had previously agreed upon. The trial court concluded that the deviation was not supported by the evidence and therefore, instead of Michael owing $1,650 per month for three children, the trial court determined that Michael's

- 4 -

child support obligation would be $1,750 per month. Kerry timely appealed from this order; Michael cross-appealed.

## ASSIGNMENTS OF ERROR

On appeal, Kerry assigns that the trial court erred by: (1) finding the parties had entered into a settlement agreement and dismissing all pending matters; (2) "failing to comply with the true intent of the July 15, 2013, mandate of the Court of Appeals"; (3) failing "to consider or rule on" Kerry's post-mandate motions; and (4) failing "to literally comply with the mandate."

On cross-appeal, Michael assigns, restated, that the trial court erred on remand in eliminating the $100 per month deviation from his child support obligation.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. The same standard applies to the modification of child support. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

## ANALYSIS

With regard to Kerry's assigned errors set forth above, we note that the Argument section of Kerry's brief does not contain headings that correspond with the errors assigned earlier in the brief. While there were four errors assigned, there are five argument headings, most of which vary quite significantly from the language contained in the assignment of errors section of Kerry's brief. Based upon Kerry's assigned errors and the content of the arguments, Kerry raises two primary disagreements with the district court's actions: (1) matters pertaining to the October 8, 2012, agreement and (2) matters pertaining to proceedings following the July 15, 2013, mandate of this court. We first address the district court's decision regarding the agreement.

*The Agreement*.

Kerry argues that the district court erred by finding the parties had entered into a settlement agreement because the evidence was insufficient to demonstrate an intent by the parties to be bound. Citing to *Woodmen of the World Life Ins. Soc. v. Kight*, 246 Neb. 619, 522 N.W.2d 155 (1994) and *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011), Kerry acknowledges that a settlement agreement is subject to the general principles of contract law, but to create a contract, there must be a meeting of the minds or a binding mutual understanding between the parties to the contract, and the circumstances must show that the parties manifested an intent to be bound by a contract. Kerry claims that the evidence offered by Michael at the hearing was insufficient to show that Kerry "had manifested an intent to be bound to anything." Brief for appellant at 17.

Kerry claims that the October 8, 2012, agreement "appeared to be at most a record of statements made in compromise negotiations, and not an actual agreement, and thus irrelevant and inadmissible" pursuant to § 27-408, which states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting

to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The trial court disagreed with Kerry's § 27-408 argument, holding instead that the agreement "bears all the hallmarks and characteristics of an agreement," and that throughout the agreement, the parties used words which convey the meaning that the parties agreed to and committed themselves to perform various acts, the words evidenced an intention of each to be bound to such performance in exchange for similar performance by the other party, and the words conveyed a mutuality of intention to resolve existing disputes between them.

The district court further observed that both parties initialed both pages of the agreement and both parties signed and dated on page 2 of the agreement. The court concluded that the agreement was "a settlement agreement and not merely a record of negotiations or of offers in compromise and settlement," and therefore overruled Kerry's objection and received the document as evidence. The district court then evaluated the enforceability of the agreement, and citing largely to *Sebesta v. Sebesta*, 202 Neb. 624, 277 N.W.2d 49 (1979), and *Shearer v. Shearer*, 270 Neb. 178, 700 N.W.2d 580 (2005), stated:

The law in Nebraska is clear that property settlement agreements entered into as part of the resolution of issues arising out of the dissolution of a marriage, including arrangements for the custody and care of minor children, bind both the parties and the court unless the provisions are found to be unconscionable. The general rules of contract law apply to such agreements and a court can permit a party to withdraw from an agreement, but only under exceptional circumstances which require proof of unconscionability, undue influence, duress, fraud, or the existence of some other basis sufficient to support recession or annulment of a contract. The burden of proving unconscionability of the agreement, lack of consideration, or some other defect in the formation of the agreement is upon the party seeking to withdraw from the agreement or to have it rescinded. Until there is a showing made that undermines the bona fides of the agreement, the agreement is enforceable according to its terms and a party cannot withdraw from such an agreement as a matter of right.

Applying that law to the facts of the case, the district court determined that the agreement "resolved all pending matters in dispute between the parties." We note that the agreement states at paragraph 8: "This Stipulation will settle all pending matters and both parties will file Motions to Dismiss." The court concluded that there were no claims or proof that the agreement was

unconscionable or obtained by fraud, duress, or undue influence, it was enforceable, was not unconscionable, and was in the best interests of the children.

In *Sebesta*, *supra*, the wife had signed a property settlement agreement prior to the hearing on the petition for dissolution. At the hearing, the wife indicated she had changed her mind since signing and did not feel the agreement was fair. The court subsequently approved the agreement and dissolved the marriage. On appeal, the wife argued that pursuant to Neb. Rev. Stat. § 42-366 (pertaining to property settlement agreements), she was entitled as a matter of right to withdraw from the agreement. Our Supreme Court held, "This court has previously stated that the statute quoted constitutes an explicit statement of legislative policy concerning the desirability and binding effect of property settlement agreements entered into pursuant thereto and that such agreements, unless found to be unconscionable, bind both parties and the court." *Sebesta*, 202 Neb. at 630, 277 N.W.2d at 52. The *Sebesta* court further concluded that the agreement was not unconscionable.

Kerry suggests that Michael's assertion that both parties signed the agreement lacked foundation and that "the trial court should have refused to consider it without evidence that [Michael] or some other person saw [Kerry] sign the [agreement], or that [Michael] or some other person was familiar with [Kerry's] signature and recognized it on the [agreement]." Brief for appellant at 18. Kerry further suggests that throughout the agreement, the names Mike and Kerry are used, and "Who are 'Mike' and 'Kelly [sic]?' Are they the appellee and appellant, or somebody else?" *Id*. As to the agreement stating "[c]hild support of $1,750 per month commencing November 1, 2011," Kerry suggests, "Who is the obligor? Is it the appellee or the appellant? The [agreement] does not make this clear." *Id*. at 18-19. Kerry goes on to suggest other allegedly confusing terms, and asserts that "[t]hese provisions are so indefinite that there is no way to determine if a breach occurred." *Id*. at 19. Since the agreement is signed by "Kerry Burns" and "Michael Burns," it is apparent who Mike and Kerry are in the agreement, and since the pending action was to modify Michael's child support, the obligor of the noted child support is not a mystery. As to Kerry's foundation argument, no objection was made to the agreement on that basis. Also, notably absent from the record is any evidence offered by Kerry to contradict Michael's assertion that the agreement was signed by both parties, nor is there any evidence that the agreement was obtained by fraud, duress, or undue influence, or was otherwise unconscionable.

We conclude that the district court correctly applied the law when considering the admissibility of the agreement in this case, and we find no abuse of discretion by the court in determining that the agreement was not unconscionable and was in the best interests of the children.

Kerry also argues that even if the district court properly found the existence of an agreement, that it should have nevertheless barred Michael from asserting its existence or enforceability on the basis of equitable estoppel. This argument rests primarily on Kerry's assertion that after the agreement was signed (in October 2012), Michael filed a second amended answer and counterclaim on January 7, 2013, and that such a pleading conveyed to Kerry that there was no agreement because "there would be no possible reason to file the second amended answer and counterclaim if there truly was an agreement." Brief for appellant at 21. However,

Kerry never raised the argument of equitable estoppel to the district court; rather, Kerry based her objection to the court's receipt of the agreement on § 27-408, which we have already addressed. And although Kerry initially raised an objection to the agreement based upon hearsay, that objection was to the agreement being attached to the motion. Since Michael's affidavit was offered as an exhibit, when Kerry's attorney was asked about specific objections to the agreement based on § 27-408 and hearsay, the response was, "Not so much hearsay, now, that - you know, we're - we've got an affidavit now." This was followed by the court asking if there were any other objections to Exhibits 101 or 100, to which, Kerry's attorney replied no. Equitable estoppel was never raised before the district court; accordingly, this court will not consider it for the first time on appeal. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004).

Kerry further points to pleadings filed after the district court's April 22, 2013, order and after this court's July 15 mandate that "should have operated to bar [Michael] from asserting the existence or enforceability of the [agreement]." Brief for appellant at 21. However, the district court could not have considered post-April 22 pleadings when it made its decision regarding the agreement on April 22, and the district court was not at liberty on remand from this court (for child support calculations) to otherwise change the content of its April 22 order. Therefore, any pleadings filed with the district court after either the district court's April 22 order or this court's July 15 mandate are irrelevant to the present appeal and the district court did not abuse its discretion by refusing to consider them on remand. The district court was tasked only with providing child support calculations, and we address Kerry's assigned error on this issue next.

*Proceedings Following the July 15, 2013, Mandate.*

Kerry argues that this court's July 15, 2013, mandate requesting the inclusion of child support calculations further supports her position that the April 22, 2013, order was in error. Kerry states that this court's mandate "could not be followed because there had not been any evidence presented to the trial court as to what information should be included on the child support worksheet," and "the only alternative available to the trial court was to vacate its April 22, 2013, order and re-set the matter for trial." Brief for appellant at 25-26. Kerry further asserts that the district court "deviated from the mandate" because it instructed the parties to prepare a child support worksheet when this court instructed the district court to do it. Brief for appellant at 27.

Kerry appears to be arguing that the district court could not ask the parties to submit child support worksheets; rather, that the court had to create the worksheets on its own. To the contrary, we note that in *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013), our Supreme Court made it clear that additional evidence could be received by a trial court on remand for inclusion of child support worksheets. In *Pearson*, a father's child support obligation was terminated in consideration of transportation costs he would incur due to the court granting the mother permission to remove the children from Nebraska to Alaska. The mother appealed the termination of child support, however, the trial court had failed to attach a child support worksheet to its order. Our Supreme Court remanded the case to the district court with directions

to complete the applicable worksheets and provide evidence in the court order of the calculations used to determine child support. The *Pearson* court indicated that the district court could receive any additional evidence it deemed relevant and material on the issue of child support.

Likewise in the case before us, the district court could properly request worksheets or other relevant financial information from the parties to aid in the court's compliance with this court's mandate. In an order filed October 15, 2013, the court directed the parties to submit "the child support calculations and any supporting financial information which each party contends should be adopted to explain the child support calculations set forth in the parties' agreement, which was marked as Appendix A and incorporated in the court's April 22, 2013 order." Kerry submitted calculations which put Michael's child support obligation between $1,875 and $2,149 for the three children; Michael's calculations showed support between $1,730 and $1,750. The October 8, 2012, agreement reflected a child support obligation of $1,750 before applying the $100 per month deviation. The district court did not abuse its discretion in receiving the proposed worksheets from the parties and adopting Michael's calculation of $1,750 per month for three children.

However, the court went on to address the $100 deviation in the agreement and decided that the deviation was not supported by evidence showing a bona fide factual basis, but held that the 80% child support abatement in September of each year had been previously approved in the court's August 18, 2010, order, and therefore left that deviation intact. We address the district court's disapproval of the $100 per month deviation next as raised in Michael's cross-appeal.

*Michael's Cross-Appeal on $100 Per Month Deviation.*

In his cross-appeal, Michael assigns that the district court erred in finding that Michael should not receive the $100 per month deviation in his child support obligation. The $100 downward deviation in child support had existed since the August 18, 2010, modification order, in which the court approved the deviation to offset the cost of Michael's transportation expenses in exercising parenting time with his children. This $100 deviation was contained again in the October 8, 2012, agreement which the district court approved on April 22, 2013. The approved agreement stated, "$100 per moth [sic] reduction continues for a net $1,650 per month retro to 11-1-11." We agree with Michael that the district court was without authority to change this provision of the agreement when the matter was remanded back to the district court solely for the purpose of providing child support calculations.

After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court; in other words, when a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate. *Molina v. Salgado-Bustamante*, 21 Neb. App. 75, 837 N.W.2d 553 (2013). Accordingly, we reverse and vacate this portion of the district court's October 31, 2013, order.

## CONCLUSION

The April 22, 2013, order incorporating the parties' October 8, 2012, agreement is affirmed. The October 31, 2013, order on remand for inclusion of child support calculations is

affirmed, except for that part disallowing the $100 per month downward deviation in Michael's child support obligation; that part is reversed and vacated.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.