Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/05/2021 08:11 AM CST

Billy Meredith Higgins, appellee, v.
Rashell Rene Currier, appellant.

___ N.W.2d ___

Filed November 13, 2020.    No. S-19-343.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Divorce: Property Division.** All property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule.

5. ____: ____. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

6. ____: ____. The original capital or value of an asset may be nonmarital, while all or some portion of the earnings or appreciation of that asset may be marital.

7. ____: ____. The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income.

8. **Divorce: Property Division: Presumptions.** Accrued investment earnings or appreciation of nonmarital assets during the marriage are

presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.

9. **Divorce: Property Division: Words and Phrases.** Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property.

10. ____: ____: ____. Passive appreciation is appreciation caused by separate contributions and nonmarital forces.

11. **Divorce: Property Division: Proof.** The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Arterburn and Welch, Judges, on appeal thereto from the District Court for Douglas County, James M. Masteller, Judge. Judgment of Court of Appeals affirmed in part, and in part reversed and remanded with directions.

Corey J. Wasserburger, of Johnson, Flodman, Guenzel & Widger, for appellant.

Megan E. Shupe and Richard W. Whitworth, of Reagan, Melton & Delaney, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

In its decree dissolving the marriage of Billy Meredith Higgins and Rashell Rene Currier, the district court for Douglas County found that Currier should be awarded $10,500 from a 401K account owned by Higgins, but otherwise awarded Higgins all funds in his retirement and investment accounts. Currier appealed, challenging various aspects of the district court's dissolution decree, and the Nebraska Court of Appeals affirmed. See *Higgins v. Currier*, No. A-19-343, 2020 WL 634183 (Neb. App. Feb. 11, 2020) (selected for posting to court website). We granted Currier's petition for further

review. We find that the Court of Appeals erred in concluding that the district court did not abuse its discretion in its disposition of Higgins' 401K accounts.

## BACKGROUND

*Parties' Marriage.*

Higgins and Currier were married in Washington on May 20, 2016. At the time of the marriage, Currier and her son from a prior relationship lived in Washington and Higgins lived in Council Bluffs, Iowa. Following the marriage, Currier and her son moved to Council Bluffs to live with Higgins. Higgins and Currier have no children together.

Higgins has been employed by TD Ameritrade since 1997. During a portion of the 14 months Currier lived with Higgins, she worked part time.

In July 2017, Currier and her son moved back to Washington. Shortly thereafter, Higgins moved to Omaha, Nebraska. After July 2017, the parties remained in contact and took occasional trips to visit one another. The parties were unable to reconcile and ended their relationship in March 2018.

Higgins initially filed a complaint for legal separation in April 2018, but later filed an amended complaint for dissolution of marriage. Trial was held in December 2018. Higgins was represented by counsel at trial. Currier represented herself. Both parties testifed and offered exhibits, which were received into evidence by the district court.

*Summary of Trial Evidence.*

Much of the evidence at trial concerned investment and retirement accounts owned by Higgins. Higgins testified that he had a TD Ameritrade account with an account number ending in "3733" (the 3733 account). He testified that the 3733 account was in existence prior to the marriage and that he did not make any deposits into the 3733 account during the marriage. Higgins' counsel referred to the account as a "brokerage account" during direct examination. Higgins asked that the

court award all funds in that account to him as a premarital asset.

In addition, Higgins testified that he had a 401K account, which was established prior to the marriage. He also asked that the district court award that account to him, but he did not provide any other testimony or documentation with respect to that account.

Currier also presented evidence regarding Higgins' accounts. She testified that Higgins had two different 401K accounts and that he was depositing $1,500 per month into the accounts. Currier also introduced and the court received two account statements for a TD Ameritrade 401K account with an account number ending in "0510" (the 0510 account). The account statements are in Higgins' name and are from May 2016 and March 2018. These statements show that the 0510 account had a value of $218,182.02 as of May 2016 and a value of $359,128.29 as of March 2018. The statements show that Higgins held stocks and mutual funds within the account and that securities were sold and purchased and interest income was received during the period summarized by each statement. When referencing the account statements for the 0510 account, Currier noted that the account statements corresponded to the month the parties were married and the month the parties separated and asked the district court to divide the account equitably.

The district court also received evidence regarding the purchase and sale of the Council Bluffs house in which the parties resided together. Higgins testified that he purchased that house in 2014 for approximately $675,000 and that, at the time, the house was appraised at $625,000. Higgins testified that he made a downpayment on the purchase of about $350,000, and a closing statement shows that he and his previous wife borrowed $315,000 to purchase the house.

Higgins testified that, at Currier's request, he sold the Council Bluffs house in July 2017. Higgins testified that the house sold for $615,000, about $58,000 less than its purchase price, and that he paid about $31,000 in fees and closing

costs. He testified that he realized about $300,000 from its sale. Following the sale of the house, Higgins used $25,000 of the proceeds to pay off a marital credit card debt. He applied the rest of the proceeds to the purchase of a new house in Omaha. Higgins asked the district court to award him the Omaha house as nonmarital property traceable to his premarital Council Bluffs house.

*District Court Decree.*

In March 2019, the district court entered a decree of dissolution, dissolving the marriage and identifying and dividing the marital estate. Perhaps unsurprisingly, given the duration of the marriage, relatively little property was identified as marital and subject to equitable division. The district court awarded Currier $303, representing half of the balance in a bank account in both parties' names. The court also awarded her $3,570, a sum representing half of an income tax refund that accumulated during the portion of 2016 the parties were married.

The district court found that the TD Ameritrade account ending in "0733" (presumably the 3733 account) was Higgins' premarital asset and that "all accumulations to [that] account were from that premarital asset." It awarded Higgins that account and any other "TD Ameritrade accounts which belonged to [Higgins] prior to the marriage."

In a separate subsection of the decree, the district court discussed retirement plans. It found that Higgins had a 401K account through TD Ameritrade which was established prior to the marriage. It found that during the marriage, he made monthly contributions of $1,500 from marital funds to that account. The court found that for purposes of dividing the marital portion of the 401K account, the operative dates for the marriage were from May 2016 to July 2017 and that Higgins thus made $21,000 in contributions to the 401K account that were subject to division. Accordingly, it awarded Currier $10,500 from Higgins' 401K and ordered it transferred through a qualified domestic relations order. The

district court awarded the parties any other retirement plans held in their own names.

In a subsection of the decree addressing real property, the district court concluded that the Council Bluffs house was not a marital asset. It also concluded that the equity in the Council Bluffs house could be traced to the house Higgins purchased in Omaha. It found that the Omaha house was not a marital asset and thus awarded Higgins all right, title, interest, and equity in that property.

*Court of Appeals.*

Currier appealed. Among other things, she assigned that the district court had erred in classifying the increase in value of the 0510 account and the Council Bluffs house as non-marital property. The Court of Appeals affirmed the district court's decree.

The Court of Appeals found that the district court did not abuse its discretion by declining to include in the marital estate the amount by which the 0510 account increased during the marriage. The Court of Appeals recognized that the question of whether the increase in value was appropriately treated as nonmarital called for the application of the active appreciation rule, whereby the burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income. It also acknowledged the district court's receipt of account statements showing that the value of that account increased from $218,182.02 in May 2016 to $359,128.29 in March 2018 and that stocks and mutual funds were sold and purchased within the account during that time. It concluded, however, that those statements did not indicate that active appreciation was the cause of the increase in value, but, rather, they suggested that "the account fluctuates, presumably depending on market forces." *Higgins v. Currier*, No. A-19-343, 2020 WL 634183 at *6 (Neb. App. Feb. 11, 2020) (selected for posting to court website).

The Court of Appeals also concluded the district court did not err by finding that the Council Bluffs residence was a non-marital asset.

## ASSIGNMENTS OF ERROR

Currier argues on further review that the Court of Appeals erred by improperly shifting the burden to her to prove that the increase in value in the 0510 account during the parties' marriage was due to active appreciation. She argues that, in this regard, the Court of Appeals' opinion is at odds with our recent opinion in *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). She contends that the increase in value of the 0510 account during the marriage should have been treated as marital property subject to equitable division.

Currier also claims that the Court of Appeals erred by failing to find that mortgage payments made during the marriage were inextricably comingled with the equity in the marital residence. We find no error in the district court's disposition of this issue, and we see no need for further comment on it. Therefore, our analysis below is limited to the assignment of error concerning the disposition of the 0510 account.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *White v. White, supra*.

[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id.*

[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

ANALYSIS

Currier introduced evidence showing that the value of the 0510 account increased during the course of the marriage. The account statements Currier introduced showed that the value of the account was $218,182.02 in May 2016 and $359,128.29 in March 2018. Currier argues that the district court should have classified this increase in value as marital property and divided it equitably.

[4-6] We have said that all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to this general rule. *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). Thus, for example, income from either party that accumulates during the marriage is a marital asset. *Id.* Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Id.* Therefore, the original capital or value of an asset may be nonmarital, while all or some portion of the earnings or appreciation of that asset may be marital. *Id.*

Currier argues that is the case here. Although she concedes that the value of the 0510 account at the time of the parties' marriage was Higgins' nonmarital property, she contends that the growth in that account during the marriage was marital. She argues that this result is compelled by the active appreciation rule.

[7-11] The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020). Under the rule, accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse. *Id.* Appreciation caused by

marital contributions is known as active appreciation, and it constitutes marital property. *Id.* Passive appreciation is appreciation caused by separate contributions and nonmarital forces. *Id.* The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income. *Id.*

In *Stephens v. Stephens*, 297 Neb. at 205, 899 N.W.2d at 595, we made clear that these principles "apply equally to appreciation or income during the marriage of any nonmarital asset." We also explained that placing the burden on the owning spouse to prove that the growth is not due to active efforts "is the better policy, because it places the burden on the party who has the best access to the relevant evidence." *Id.* at 206, 899 N.W.2d at 595.

We recently had occasion to apply the active appreciation rule in *White v. White, supra*. In that case, the husband created an investment account with funds he inherited. He argued that the district court abused its discretion by treating the appreciation in that account during the course of the marriage as marital property. We rejected the argument. We explained that under the active appreciation rule articulated in *Stephens v. Stephens, supra*, it was the husband's burden to establish that the growth in the account was attributable solely to passive market forces or separate contributions. We also noted ways in which the husband might have been able to carry this burden: by showing that the growth was consistent with "some recognized benchmark of general market growth," that the annual rate of return was guaranteed or statutorily prescribed, or that he relied on the recommendations or management of his account by a third party. *White v. White*, 304 Neb. at 961, 937 N.W.2d at 851. But because the husband failed to present evidence on any of these points or any evidence showing that his efforts did not cause the appreciation, we found that the district court did not err in classifying the appreciation in the account as marital.

Currier argues that under the active appreciation rule, as applied in *White*, the increase in the value of the 0510 account is also marital property subject to equitable division. She does not dispute that Higgins satisfied the first element of the active appreciation rule by showing that the growth in the 0510 account was readily identifiable and traceable to the nonmarital portion of the account. But she contends that like the husband in *White*, Higgins introduced no evidence showing that the growth was not due to the active efforts of either spouse.

In response to this argument, Higgins has not directed us to any evidence in the record that might tend to show that the increase in the value of the 0510 account came about as a result of something other than the active efforts of either spouse. Indeed, during closing argument, Higgins' counsel seemed to acknowledge the lack of such evidence, stating "there's been absolutely no testimony that would guide the Court in determining how to divvy up any income and interest that would have come into that account during the time . . . that these folks have been married."

Unable to point to evidence that the increase in value in the 0510 account was the result of passive appreciation, Higgins attempts to undermine Currier's argument in other ways. First, he contends that Currier did not adequately raise this issue in the district court. We disagree. In referencing the exhibit she offered into evidence showing the increase in value of the 0510 account between May 2016 and March 2018, Currier mentioned that the account statements corresponded with the month the parties were married and the month they separated, and she asked the district court to "divide that equitably." Higgins' counsel appeared to understand that Currier was asking that at least some portion of Higgins' accounts be treated as marital property subject to equitable division. On cross-examination, he had Currier confirm that she was asking the district court to award her a portion of Higgins' 401K, and, in closing argument, he contended that, with the possible exception of funds that were contributed to accounts

during the marriage, Higgins should be awarded the entirety of any investment or retirement accounts. We believe Currier adequately informed the district court and Higgins that she sought the equitable division of the 0510 account.

Higgins also argues that despite the lack of evidence that the increase in the value of the 0510 account was the result of passive appreciation, the Court of Appeals correctly applied the active appreciation rule. Again, we disagree. The Court of Appeals stated that the exhibits Currier offered regarding the 0510 account did not show any funds being deposited, but instead showed stocks and mutual funds being sold and purchased within the account along with the receipt of interest income. It noted that the March 2018 statement showed a $20,000 loss for the month. It concluded that this evidence "does not indicate that active appreciation is the cause of the increase in value during the marriage; rather, it indicates that the account fluctuates, presumably depending on market forces." *Higgins v. Currier*, No. A-19-343, 2020 WL 634183 at *6 (Neb. App. Feb. 11, 2020) (selected for posting to court website).

Although the Court of Appeals recognized earlier in its opinion that the burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income, its analysis treated Currier as if she had the burden to show that the increase was caused by active appreciation. After concluding that the exhibits Currier offered did not demonstrate active appreciation, the Court of Appeals *presumed* that the account increased due solely to market forces. This was an incorrect application of the active appreciation rule. The burden was on Higgins to show that the increase in the 0510 account was the result of passive appreciation. Higgins was obligated to adduce evidence to carry that burden as opposed to relying on presumptions. He did not do so. Thus, under the active appreciation rule, the increase in value of the 0510 account during the marriage should have been treated as marital property.

We are not swayed from this conclusion by Higgins' contention at oral argument that Currier's argument is flawed because the district court, for purposes of determining contributions to Higgins' 401K, treated the marriage as effectively concluded in July 2017 when Currier returned to Washington. Higgins pointed out that although Currier offered evidence of the value of the account in March 2018, she did not offer evidence of the value of the account in July 2017. He claimed that there is thus no evidence of how much the value of the 0510 account increased from the beginning of the marriage until its effective conclusion as determined by the district court.

Higgins is correct that Currier did not introduce evidence showing the value of the 0510 account in July 2017, but that does not affect our conclusion that under these circumstances, the increase between May 2016 and March 2018 should have been treated as marital property subject to equitable division. As we have discussed, because Higgins did not show that the increase in the 0510 account resulted from passive appreciation, the increase in the account during the marriage should have been treated as marital property under the active appreciation rule. To the extent the value of the account increased after the effective end of the marriage as determined by the district court and rendered any marginal increase after that time nonmarital property, Higgins had the burden to prove it. See *Burgardt v. Burgardt*, 304 Neb. 356, 363, 934 N.W.2d 488, 494 (2019) ("[i]n a marital dissolution proceeding, the burden of proof rests with the party claiming that property is nonmarital"). Higgins, however, introduced no evidence regarding the value of the 0510 account in July 2017 or any other time.

For all these reasons, we conclude that the increase in the value of the 0510 account should have been treated as marital property subject to equitable division. The district court abused its discretion by finding otherwise, and the Court of Appeals erred by failing to reverse on this issue.

*Disposition.*

Currier argues that given the district court's error, we should modify the decree to award her half of the increase in the value of the 0510 account. While our de novo on the record standard of review permits us to modify a dissolution decree, we believe it best to instead reverse, and remand with directions in this case.

As we have noted, while the district court did not treat the entire increase of the 0510 account as marital property, it did find that Higgins deposited $21,000 into a 401K account during the marriage. It determined those were marital contributions and, as a result, awarded Currier $10,500 from the 401K account. It is not clear to us from the decree or the broader record, however, whether the district court determined that those contributions were made to the 0510 account or another account. If the contributions were found to be made to the 0510 account, it would be double counting to treat both those contributions and the full $140,946.27 increase in the 0510 account as marital property. If the contributions were found to be made to some other account, however, then the entire increase in the 0510 account should be treated as marital property in addition to the $21,000 in marital contributions the district court treated as marital in its initial decree.

Given this uncertainty in the record and because the district court is in a better position to make an equitable division, we will return this case to the district court. We do so by remanding the cause to the Court of Appeals and directing that it reverse the district court's decree in part and remand the cause to the district court with the following directions. The district court should clarify whether the $21,000 in contributions found by the district court to be marital property were made to the 0510 account. If so, an additional $119,946.27 should also be treated as marital. If not, an additional $140,946.27 should be treated as marital. The district court should also determine the equitable division of marital property. See *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017) (remanding

to district court to determine equitable distribution of asset found to be marital). All such determinations should be made based on the existing record.

## CONCLUSION

The Court of Appeals and the district court erred in their application of the active appreciation rule. We reverse the decision of the Court of Appeals to the extent it affirmed the district court's award of all but $10,500 from Higgins' 401K account to Higgins. On that issue, we remand the cause to the Court of Appeals and direct that it reverse the district court's decree in part and remand the cause with directions to the district court as outlined above. In all other respects, we affirm.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.