Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/30/2021 09:11 AM CDT

Daniel D. Cornwell, appellant and
cross-appellee, v. Melanie J. Cornwell,
appellee and cross-appellant.

___ N.W.2d ___

Filed May 7, 2021.    No. S-20-530.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Property Division: Pensions: Words and Phrases.** Under the deferred distribution method, the court makes no immediate division of retirement benefits, but determines a percentage share which the nonowning spouse will receive when the owning spouse retires and orders that the nonowning spouse receive that percentage of every payment check which the owning spouse is entitled to receive.

5. ____: ____: ____. Under the immediate offset method, the court determines the present value of a share in the pension of the owning spouse and immediately awards the nonowning spouse a lump-sum amount in view of that value.

6. **Divorce: Attorney Fees.** In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved

in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.

7. **Courts: Attorney Fees.** Courts have the inherent power to award attorney fees in certain unusual circumstances amounting to conduct during the course of litigation which is vexatious, unfounded, and dilatory, such that it amounts to bad faith.

Appeal from the District Court for Nance County: Rachel A. Daugherty, Judge. Affirmed.

Kathryn D. Putnam, of Astley Putnam, P.C., L.L.O., for appellant.

Nathan T. Bruner, of Bruner, Frank, Schumacher & Husak, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

The Nance County District Court dissolved the marriage of Daniel D. Cornwell and Melanie J. Cornwell. In connection with its division of the parties' marital property, the district court used the immediate offset method of valuation to value the marital portion of Daniel's pension. The district court then awarded the pension to Daniel and ordered him to make a cash equalization payment to Melanie, payable over time. Primarily at issue on appeal is the use of the immediate offset method to value the pension. We affirm.

## II. FACTUAL BACKGROUND

Daniel and Melanie were married in 1999. At the time of their marriage and for 11 years thereafter, Daniel was employed with the Maryland State Police. As the result of a workplace accident, Daniel retired in 2010.

Daniel's pension was a disability pension and placed some limitations on his future employment. However, Daniel was able to obtain employment, first with Maryland Fire and Rescue and later as a government contractor for the Department of Justice, working with the Bureau of Alcohol, Tobacco, Firearms and Explosives and the Federal Emergency Management Agency. That job required him to live within 3 hours of his assigned duty location, which was Kansas City, Missouri; thus, Daniel and Melanie rented an apartment in the Kansas City area. However, they also owned a property in Belgrade, Nance County, Nebraska, which they considered to be their permanent home.

At Daniel's suggestion, Melanie moved to Scottsdale, Arizona, in November 2016, because she had health issues that the couple hoped would be helped by the warmer weather. The parties separated in 2017, with Daniel's filing for divorce in June.

The record suggests that the divorce was contentious, with many issues litigated, as is partially reflected by Melanie's cross-appeal regarding the district court's failure to award her attorney fees and costs. However, as noted above, the primary issue on appeal is the valuation of Daniel's retirement plan from his employment with the Maryland State Police.

Daniel's retirement plan is a defined benefit plan that has been in pay status since his retirement in 2010. Daniel originally retired on a full service pension, but several months post-retirement, the plan was retroactively changed to a disability pension. Because the plan is in part a disability pension, Daniel pays no taxes on that part of his monthly payout; the plan has no lump-sum buyout provision.

The parties have stipulated that 49 percent of the value of the pension is marital. Melanie wished to utilize the immediate offset method of valuation to value the pension. Melanie's expert, David Rosenbaum, set the current total value of the pension at $2,561,009, with a 49-percent share valued at $1,254,894.

Daniel's expert, Ernest Goss, challenged the accuracy of that valuation, suggesting that the valuation was speculative on various bases. Instead, Daniel sought to divide the pension via a domestic relations order (DRO).

Following a trial, the district court accepted Rosenbaum's valuation for purposes of valuation of the entire marital estate. It then awarded the pension to Daniel and divided the estate in half. Daniel was ordered to make an equalization payment to Melanie in the amount of $403,892, to be payable annually in the amount of $100,000 per year until paid in full. In addition, though noting that Daniel had perhaps engaged in some "'game playing'" at the mediation, the court ordered each party to pay its own fees and costs.

Daniel appeals, and Melanie cross-appeals.

### III. ASSIGNMENTS OF ERROR

Daniel assigns that the district court erred in using the immediate offset method to value his pension.

On cross-appeal, Melanie assigns that the district court erred in not awarding her attorney fees and costs.

### IV. STANDARD OF REVIEW

[1-3] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[1] This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant

---

[1] *Higgins v. Currier*, 307 Neb. 748, 950 N.W.2d 631 (2020).

[2] *Id.*

[3] *Id.*

of a substantial right and denying just results in matters submitted for disposition.[4]

## V. ANALYSIS

### 1. Pension Plan

On appeal, Daniel assigns that the district court erred in utilizing the immediate offset method to value and distribute his Maryland State Police pension, rather than the deferred distribution method effected via the use of a DRO. Daniel argues that the process of determining a present value of the pension was too difficult and speculative. He also argues that the district court failed to examine whether there was "sufficient equivalent property in the estate to satisfy the claim of the non-owning spouse without causing undue hardship to the owning spouse."[5]

As an initial matter, we turn to Melanie's assertions (1) that Daniel sought a DRO prohibited by Maryland law and (2) that he has waived any objection to the immediate offset method by failing to object to her expert's testimony. Both assertions are without merit.

### (a) QDRO Versus DRO

Throughout his case, Daniel and his counsel sought use of the deferred distribution method and a qualified domestic relations order (QDRO). And it appears, at least for purposes of the Maryland pension plan at issue, that the correct term is "domestic relations order." Still, Melanie's contention on appeal is one of semantics—there is nothing in the record that would suggest that a QDRO and a DRO are not functionally the same thing. This argument is without merit.

### (b) Waiver

We turn to Melanie's waiver argument. Daniel and Melanie differed in their positions regarding how the marital portion

---

[4] *Id.*

[5] Brief for appellant at 19.

of Daniel's Maryland State Police pension should be distributed. Melanie offered Rosenbaum's report and testimony in order to value the pension and, by extension, provide a basis for use of the immediate offset method. Daniel offered Goss' report and testimony to rebut Rosenbaum's opinion of valuation and, by extension, support his contention that use of the deferred distribution method was preferred because a reliable present value could not be determined.[6] Melanie argues that by failing to object to Rosenbaum's testimony, Daniel has waived his objection to the immediate offset method and Rosenbaum's valuation.

We disagree. Daniel's position throughout has been that the district court should use the deferred distribution method of valuation rather than the immediate offset method. Daniel was not concerned with the admissibility of Rosenbaum's evidence or with the court's ability to hear and consider testimony regarding the immediate offset method; rather, he was concerned with the weight granted that theory by the district court. While a party must object to questions of admissibility or risk waiving them, no such objections are required with respect to the weight accorded such evidence.[7] Melanie's contention regarding waiver is without merit.

### (c) Merits

We turn to the merits of Daniel's appeal, pausing first to note that the parties at times describe Daniel's Maryland State Police pension as a "disability pension." Prior opinions from this court and the Nebraska Court of Appeals have suggested there may be circumstances under which disability pension

---

[6] See 2 Brett R. Turner, Equitable Distribution of Property § 6:41 (4th ed. 2020).

[7] Cf., *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019); *City of Lincoln v. Realty Trust Group*, 270 Neb. 587, 705 N.W.2d 432 (2005); *Tank v. Peterson*, 219 Neb. 438, 363 N.W.2d 530 (1985).

benefits are properly classified as nonmarital property.[8] We need not address that question here, however, because the parties have stipulated that 51 percent of Daniel's disability pension is nonmarital. Because no party challenges the proper classification of these pension benefits, we confine our analysis to whether there was error in the district court's evaluation or distribution of the marital portion of those benefits.

Under Neb. Rev. Stat. § 42-366(8) (Reissue 2016), a pension is part of the marital estate. In *Reichert v. Reichert*,[9] this court interpreted the statute and adopted the rule that "the marital estate includes only that portion of the pension which is earned during the marriage." In *Shockley v. Shockley*,[10] we stated that "[c]ontributions to pensions before marriage or after dissolution are not assets of the marital estate."

[4,5] This appeal presents a choice between two major competing methods of division, each with its own rules of valuation:[11] the deferred distribution method and the immediate offset method.

> [Under the] "deferred distribution method" . . . the court makes no immediate division of retirement benefits, but determines a percentage share which the nonowning spouse will receive when the owning spouse retires and orders that the nonowning spouse receive that percentage of every payment check which the owning spouse is entitled to receive. . . . This is in opposition to the "immediate offset method" where the court determines

---

[8] See, e.g., *Shearer v. Shearer*, 270 Neb. 178, 700 N.W.2d 580 (2005); *Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657 (1999); *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997); *Bandy v. Bandy*, 17 Neb. App. 97, 756 N.W.2d 751 (2008); *John v. John*, 1 Neb. App. 947, 511 N.W.2d 544 (1993).

[9] *Reichert v. Reichert*, 246 Neb. 31, 35, 516 N.W.2d 600, 604 (1994).

[10] *Shockley v. Shockley*, 251 Neb. 896, 899, 560 N.W.2d 777, 780 (1997).

[11] 2 Turner, *supra* note 6, § 6:30 (discussing methods for distributing retirement benefits—defined benefit plans in general).

the present value of a share in the pension of the owning spouse and immediately awards the nonowning spouse a lump-sum amount in view of that value.[12] The Court of Appeals noted in *Polly v. Polly*[13] that the deferred distribution method is the most widely accepted method of dividing retirement benefits; still, the immediate offset method remains a viable method under Nebraska law.[14] Contrary to Daniel's implication, while the deferred distribution method is perhaps the most widely accepted, such does not make it the preferred method of division for retirement benefits.

The district court's use of the immediate offset method of valuation was not an abuse of discretion. Having reviewed the record, we determine it is clear, as we have noted, that the parties' divorce was contentious. One of the benefits of the immediate offset method is that it effectuates a complete and immediate, albeit slightly deferred, split of the retirement account at question, which in the case of Daniel and Melanie would be advantageous.[15]

Relatedly, the immediate offset method is useful in cases where there is a likelihood of manipulation of the retirement account.[16] The record contains an allegation that Daniel made changes to his pension without notifying Melanie. When this is considered in tandem with the general contentiousness of this divorce, such supports the use of the immediate offset method and as clean a break between Daniel and Melanie as possible.

In addition, reasons to use the deferred distribution method are not present. For example, we have evidence of present

---

[12] *Koziol v. Koziol*, 10 Neb. App. 675, 692-93, 636 N.W.2d 890, 906 (2001). See, also, 2 Turner, *supra* note 6, §§ 6:30 to 6:32.

[13] *Polly v. Polly*, 1 Neb. App. 121, 487 N.W.2d 558 (1992).

[14] Cf. *Koziol v. Koziol, supra* note 12.

[15] See 2 Turner, *supra* note 6, §§ 6:31 and 6:36.

[16] See *id.*, § 6:36.

value.[17] Also, because Daniel's pension was in pay status, the amount of his benefits was not unusually speculative.[18] And both Daniel and Melanie have nonmarital property and income, so the need for a steady retirement income that would result from the deferred distribution method is not obviously present.[19]

Daniel alleges that the parties' limited marital estate supports the use of the deferred distribution method. Daniel contends that the marital estate does not include sufficient property that he could liquidate in order to make payment to equalize the estate.

But contrary to Daniel's implication, this was not a limited marital estate. Together, Daniel and Melanie had significant assets, including three homes and multiple investment accounts. Daniel had access to significant funds outside of the marital estate, including at least 2 years' pension payments received during the pendency of the divorce of which Melanie received none. Moreover, the district court created a plan for the equalization payment, allowing Daniel to pay it off over multiple years.

Having reviewed the record de novo, we cannot say that the district court's decision to use the immediate offset method of valuation and to accordingly value and divide the estate as it did was an abuse of discretion. There is no merit to this assignment of error.

## 2. ATTORNEY FEES

On cross-appeal, Melanie assigns that the district court erred in not awarding her attorney fees and costs. She argues that Daniel's actions throughout the divorce process "frustrated and impeded at nearly every step."[20]

---

[17] See *id.*

[18] See *id.*

[19] See *id.*

[20] Brief for appellee on cross-appeal at 41.

As an initial matter, Daniel argues that Melanie has failed to comply with this court's rules regarding the filing of a cross-appeal, because she does not have a separate title page indicating her cross-appeal. But Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014) provides not that the brief and the brief on cross-appeal must each have separate title pages, but that "[w]here the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief." Both of these criteria were met in this case, with Melanie's cross-appeal separately indicated on the cover of her brief on appeal. Daniel's argument to the contrary is without merit.

[6,7] We now turn to the merits of Melanie's cross-appeal. In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services.[21] In addition, courts have the inherent power to award attorney fees in certain unusual circumstances amounting to conduct during the course of litigation which is vexatious, unfounded, and dilatory, such that it amounts to bad faith.[22]

As we did with respect to the valuation of the pension plan and division of the marital estate, we review de novo on the record to determine whether there has been an abuse of discretion by the trial judge in the award of attorney fees.[23] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant

---

[21] *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

[22] *Leners v. Leners*, 302 Neb. 904, 925 N.W.2d 704 (2019), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019); *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

[23] See *Higgins v. Currier, supra* note 1.

of a substantial right and denying just results in matters submitted for disposition.[24]

In this case, the record supports the district court's decision to not award attorney fees. As noted above, while the record demonstrates that this divorce was contentious, the record also shows that both sides at times prolonged the process. Given this conflict, we cannot say the decision to not award fees and costs was an abuse of discretion.

## VI. CONCLUSION

The decision of the district court is affirmed.

Affirmed.

---

[24] *Id.*